## McBeth-Evans Glass Company *v.* Brunson.

[No. 9,764. Filed May 13, 1919. Rehearing denied June 18, 1919.]

1. MASTER AND SERVANT.—*Injury to Servant.—Action.—Complaint. —Sufficiency.—*In an action by a glass-blower against a glass company for personal injuries, paragraphs of complaint alleging that plaintiff's eyes were injured through defendant's negligence in permitting poisonous dust and fumes to escape from its mixing room into the room where plaintiff was working, and by reason of being exposed to intense radiated heat, against which plaintiff was not instructed how to protect himself, *held* good as against demurrer. p. 515.

2. MASTER AND SERVANT.—*Injury to Servant.—Action.—Instructions.—Ignoring Issues.—Proximate Cause.—*In an action by a glass blower against a glass company for injuries alleged to have been caused by defendant's negligence in permitting poisonous dust and fumes to escape from its mixing room into the room where plaintiff was working, an instruction that, if plaintiff, because of such poisonous dust, had been injured in his general health, and as a result of the condition of his general health he suffered cataracts of the eyes, though not expressly stating that the jury must find the condition of plaintiff's health resulting in cataracts was produced by the poisonous gas, etc., *held* neither misleading nor objectionable as directing a particular verdict for plaintiff upon presupposed acts of negligence therein set forth and omitting the essential element of proximate cause. p. 522.

3. MASTER AND SERVANT.—*Injury to Servant.—Action.—Instructions.—Contributory Negligence.—*In an action by a glass-blower for personal injuries, an instruction that the jury must find, before they would be warranted in returning a verdict for plaintiff, that he had no knowledge that breathing the poisonous dust, gases and fumes, which injured his general health and caused cataracts to form on his eyes, was injurious to him, was not erroneous as omitting the element of contributory negligence, since, without knowledge of the effect of the dust, etc., on his health, plaintiff could not have been guilty of contributory negligence in continuing in his work. p. 523.

4. NEGLIGENCE.—*Negligence per se.—Violation of Statute.—*Where the acts and omissions complained of, in a servant's action against the master for personal injuries, were a matter of statutory duty, defendant's failure to observe the statute was negligence *per se.* p. 523.

5. MASTER AND SERVANT.—*Injury to Servant.—Negligence.—Failure to Comply with Statute.—*If a glass company knew of the pois-

onous nature and deleterious effect of gases and dust which it allowed to escape from its mixing room, and permitted the continued exposure of workmen thereto, it was negligent, as a matter of law, under §3862d Burns 1914, Acts 1911 p. 599. p. 524.

6. MASTER AND SERVANT.—*Injury to Servant.—Negligence.*—If a glass company had no actual knowledge that poisonous gases and dust which it permitted to escape from its mixing room were injurious to employes, but by the exercise of reasonable care could have learned such fact, and yet allowed the partition between the mixing room and an adjoining one to become in disrepair, so that dust and gases passed through into the other room and affected workmen therein employed, the company was negligent in not ascertaining the facts as to the percolation of gas and dust, and in permitting further unnecessary exposure of its employes thereto. p. 525.

7. MASTER AND SERVANT.—*Injury to Servant.—Action.—Instruction. —Negligence.—Invading Province of Jury.*—In an action against a glass company by a glass-blower for injuries to his eyes from exposure to intense heat, an instruction that the company was guilty of negligence in ordering plaintiff to work where his eyes were subjected to such heat when he was in a "run-down condition of health," *held* erroneous as informing the jury that the giving of such order, under the circumstances alleged in the complaint, was negligence *per se,* whereas the question was one of fact for the determination of the jury. p. 525.

8. TRIAL.—*Instruction.—Predicating on Erroneous Instruction.*—An instruction predicated on other instructions previously given by the specific reference "as hereinbefore set forth," is bad, if any of such other instructions are erroneous. p. 527.

From Madison Circuit Court; *Luther F. Pence,* Judge.

Action by Earl S. Brunson against the McBeth-Evans Glass Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*B. H. Campbell, F. E. Matson, Ralph K. Kane, James A. Ross, Robert D. McCord, L. R. Zapf* and *A. A. Schreiber,* for appellant.

*Kittinger & Diven,* for appellee.

ENLOE, J.—The complaint upon which this case was tried consisted of two paragraphs. To each of said

paragraphs separate demurrers were addressed for want of facts. The demurrers were overruled.

The errors assigned are: First, the overruling of the demurrer to the first paragraph of complaint. Second, the overruling of the demurrer to the second paragraph of complaint. Third, the overruling of the appellant's motion for a new trial.

The first paragraph of complaint is quite lengthy, but the material averments therein contained are:

1. That defendant is a corporation, engaged in operating a glass factory at Elwood, Indiana, and has been so engaged for fifteen or twenty years, manufacturing lamp chimneys and other glass products; that it owns its own factory building and grounds, and employs from 100 to 300 men, in the various departments of its factory, in the operation thereof; that plaintiff entered the employ of said defendant some years ago, working first as a gatherer of molten glass, and later as a glass-blower, working in the blowing room; that adjacent to the blowing room defendant maintained a room known as a mixing room, where it mixed products, used in the manufacture of glass, in large troughs; that among the poisonous substances so there mixed were suboxide of copper, oxide of tin, white sand, pearl ash, saltpeter, arsenic, magnesia, soda-ash, lime, carbonate of soda, nitre, charcoal, lead and pearl ashes, which said substances were, during all of said time, mixed dry; that all of said substances were injurious to human beings who came in contact with them, and especially to the eyes of such persons.

That from the mixing of said poisonous substances in a dry and powdery state there arose a cloud of dust, which, if not confined and prevented from blowing

from said mixing room into the other departments of said factory, would permeate the atmosphere in other parts of said factory; that said dust was deleterious to health, and liable to injure the eyes and eyesight of human beings who were compelled to work in the air so permeated therewith.

That it was defendant's duty to confine said poisonous dust in said mixing room, and prevent the same from entering the other departments of said factory, and to protect its workmen from said dust, and keep the dust from said poisonous chemicals from entering the eyes and lungs of such employes; that the deleterious and injurious effect of the dust upon the eyes of human beings was well known to defendant at all times.

That between September, 1912, and June, 1914, plaintiff worked from time to time as a blower in the blowing room, and during said time his eyes and his eyesight became affected and injured from the dust permeating the air and atmosphere in the blowing room, coming from the mixing room, where said chemicals were so mixed; that he did not know said dust was injuring his eyes, or eyesight, or that it would injure them, until since he ceased work in June, 1914, but defendant did at all times know that the dust from said poisons, coming in contact with the eyes of its workmen, would injure them and destroy the sight thereof.

That said defendant could have prevented the employes from coming in contact with said poisonous dust, and avoided any injury to its employes and plaintiff therefrom, had said defendant kept the mixing room tightly closed and allowed no cracks or openings therein; that the defendant negligently and

carelessly allowed the partition between the blowing room and the mixing room to remain loose and open, with large cracks in the same, so that dust and fumes from the mixing room escaped through the same into said blowing room and permeated the air therein, and blew into plaintiff's face and eyes, while he was working therein blowing glass; that there were doors in said mixing room for the purpose of keeping the same closed, but said defendant, during all of said time negligently allowed and permitted said doors to be open, and said dust to escape through the same into the blowing room; that defendant during all of said time negligently suffered and permitted the partition shutting off the mixing room to be loose and insecure, and allowed large cracks and openings to remain in same, so that the same was at all times open and permitted the dust from said troughs and said poisonous chemicals to escape from the mixing room through said openings and through said doors into the blowing room, and into the plaintiff's face and eyes, thereby injuring his eyes and eyesight.

That plaintiff was engaged in blowing glass in said department of defendant's factory, and did not appreciate or know the danger thereof, and did not realize or know that his eyes were being injured from the poisonous air until the injury was done, his eyesight affected, and his general health impaired; that he has not worked in said factory since acquiring such knowledge.

That the said poisonous dust which so escaped through said faulty and negligently constructed walls of the mixing room into said blowing room, and into the face and eyes of plaintiff, did injure his general health and his eyes and eyesight and cause cataracts

to form over the pupils of his eyes so that his eyesight was seriously impaired, and he could not see to get about to work, and was compelled to quit work and go to an oculist for treatment for his eyes, at large expense; that he has been rendered practically blind, and his eyes and eyesight have been so injured that they cannot be cured; that his eyes before said time were in good condition, and he could see well to work and get about, and was able to earn three dollars, or more, per day.

That, by reason of the negligence of defendant in allowing the doors between said blowing room and said mixing room to be and remain open, and in allowing many large cracks and openings to remain in the wall, so as to permit said poisonous dust from said chemicals, while being so mixed therein, to escape from said mixing room into said blowing room, where plaintiff worked, the place where plaintiff worked was rendered unsafe and dangerous to him, all of which could have been avoided by the use of ordinary care and diligence on the part of said defendant.

The plaintiff had worked for defendant from time to time since 1905, working first as a gatherer and afterwards as a blower; that he worked in said blowing room in 1912, and to the early part of 1913, as a blower, when, on account of general bad health, he laid off until the autumn of 1913, when he again began working for defendant, and thereafter worked part of the time as a gatherer, and part of the time as a blower, as directed by defendant, in said blowing room; that defendant knew all the time, and could have known by the use of ordinary care, of all of said conditions herein alleged, and of said dangers to plaintiff from said gases, dust and fumes; that said

poisonous gases, dust and fumes work upon one exposed thereto in an insidious manner, and give no warning to the person exposed by causing any pain, and one unacquainted with the facts as to the action of this poison would not know of the injury being done him until it was done; that plaintiff was ignorant of the danger of said gases, fumes and dust, and had no notice or knowledge that it was from that source that his general health had become impaired and his eyes injured.

That, by reason of the facts herein alleged, the place in which he was compelled to work was a dangerous and unsafe place in which to work, which fact plaintiff did not know, and which fact defendant did at all times know, or could have known by the use of ordinary care; that the said injuries to plaintiff were caused and brought about by the negligence and carelessness of defendant in failing to furnish plaintiff a safe place in which to work, as aforesaid; that plaintiff is twenty-nine years of age, and his eyesight is permanently impaired, and his general health impaired; that said injury to his eyes and loss of his sight was caused and brought about by the negligence and carelessness of defendant, as herein averred, and not otherwise.

Then follows a statement of special damages, and the paragraph concludes with prayer for damages in the sum of $20,000.

The second paragraph of complaint charges the same general acts of negligence charged in the first paragraph of complaint, and it also contains two additional charges of negligence, viz.: (1) Negligence in not instructing plaintiff as to the dangers to his eyes, when the same were, during the course of his employ-

ment, exposed to intense radiated heat. This negligence is 'charged in the following language: "That in working at said trade as a gatherer, or said trade as a blower, he was exposed to an intense heat. That said radiated heat has a tendency to affect and cause diseases of the eyes, of which fact plaintiff had no notice or knowledge until since this suit was filed, and he was never informed of said fact by defendant, who well knew of said fact. That to resist said tendency to cause disease of the eyes, the workman should be instructed how to protect himself, but plaintiff was not so instructed and defendant negligently failed to instruct him as to the danger to his eyes from exposure of them while working where he was exposed to intense heat, as herein set out; and to resist the same the employe should remain in the best of health. That if the employe is working and exposed to said heat and becomes from other causes weak and debilitated, then he becomes more susceptible to disease of the eyes from said work and exposure to heat." (2) The alleged negligence of the defendant in causing him to work where he was exposed to great heat, at a time when he was in a general rundown condition of health, is charged in the following language: "That plaintiff not having been warned, instructed, or informed of any of said facts, kept working as aforesaid as a gatherer and blower in said blowing room of said defendant's factory, and frequently after his regular hours as a gatherer or blower he was compelled to and did work from one and a half to three hours in setting pots, which was difficult work and exposed his body and his eyes to great heat. That on account of plaintiff working in said blowing room, as aforesaid, and inhaling said

dust, gases and fumes, as aforesaid, and on account of said overwork in assisting in setting said pots as aforesaid, plaintiff's general health was injured and impaired, and he became weak, sick and debilitated, which condition of health crept upon him so insidiously that before he realized it he was in said condition, without knowledge or notice of the cause thereof. That he had made said business of gathering and blowing glass his trade while working for the defendant and had to rely upon his said work to support himself and family. That when he would become weakened and have to quit work he would take a rest and regain his health to some extent and then again go to work, as aforesaid, without any knowledge or notice of what was causing his bad health. That knowing nothing about and having no notice that said heat had a tendency to cause disease of the eyes, and that his general bad health would make him more liable to contract said disease of the eyes, he kept on working as aforesaid, until June, 1914, and from such work contracted a disease of the eyes which has rendered him almost blind and made it impossible for him to work or to earn money. That he cannot get about except by the help of others." Special damages are then alleged, and this paragraph concludes with the prayer for damages in the sum of $20,000.

Each paragraph of this complaint is good, and the demurrers thereto were properly overruled.

Appellant also urges that the trial court erred in overruling its motion for a new trial. By its fourth specification, in its motion for a new trial, the appellant says: "The court erred in giving to the jury instruction No. 2 as requested by the plaintiff, and given by the court, which instruction was No. 3 of those read by the court to the jury."

Appellant objects to this instruction on three grounds: First, because, it says, it directs a particular verdict in favor of the plaintiff upon the presupposed acts of negligence on the part of the appellant as therein set forth, and omitted and ignored the essential element of proximate cause. Second, because, it says, the instruction complained of omits the essential element of want of contributory negligence on the part of appellee, and directs a verdict upon the facts, or acts of appellant, without reference to appellant's care or want of care. Third, because, it says, it invades the province of the jury in assuming that the acts and omissions of appellant therein referred to constituted and were, under the circumstances, negligent.

This instruction is not open to the objections urged by counsel against it.

As to proximate cause, the language of said instruction, as it relates to that element, is as follows, after reciting the allegations of the complaint:

2. "and during all said length of time said defendant by the use of ordinary care could have known the same, and you further find that the breathing of said dust, gases and fumes that came from said mixture, as aforesaid, were injurious to the plaintiff, of which fact he had no knowledge, and of which fact the defendant could have known, by the use of ordinary care, or did know, and you further find that the plaintiff has been injured thereby in his general health, and as a result of the condition of his general health he has suffered cataracts of the eyes, then I instruct you that, if you find the facts stated in this instruction to be true, you will be entitled to find for the plaintiff."

While it is true that this instruction does not say in express terms that the jury must find that, *as a result of the condition of his general health, so produced as aforesaid,* he has suffered cataracts of the eyes, yet the instruction is so plain that the jury could not have been misled thereby.

As to the contributory negligence of the plaintiff, the jury were told that they must find, before they would be warranted in returning a verdict for 3. the plaintiff, that plaintiff had no knowledge that the breathing of the dust, gases and fumes that came from said mixture were injurious to him. The jury was required to find that plaintiff had no knowledge, and, if he had no knowledge, it is difficult to conceive how he could have been guilty of contributory negligence, causing his injury, as applied to the above instruction.

Next it is urged that this instruction is bad in that it assumes the appellant to have been negligent, under the circumstances, as to the acts and omissions complained of.

If the acts and omissions complained of, as stated in this instruction, were a matter of statutory 4. duty, then the failure of defendant to observe the statute and comply therewith was negligence *per se.*

It is alleged in the first paragraph of amended complaint, among other things, ''that the dust and gases coming into the mixing room were poisonous; that the breathing of them was deleterious to health; that plaintiff while at his work under his employment, did breathe and inhale these gases and dust; that they injured his health; that he did not know that they were injurious to health at the time he was laboring

there and breathing and inhaling them; that the defendant did know they were injurious to the workmen, or by the exercise of ordinary care could have known that fact.'' All these facts, with others mentioned in said instruction, the jury were told they must find before returning a verdict for plaintiff.

Section 4, ch. 236, Acts 1911 p. 599, §3862d Burns 1914, provides: "It is hereby made the duty of all owners, * * * corporations, agents or persons whatsoever, engaged in the care, operation, management, * * * of any * * * shop, factory or business of whatsoever kind, * * * and, generally, it shall be the duty of all owners, managers, operators, contractors, * * * and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plants, means, employment, or business of whatsoever nature, involving risk or danger to employes, * * * to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, * * * appliances, apparatus, or other devices or materials, without regard to additional cost of suitable materials or safety appliances, or safe conditions, or operations, the first concern being safety to life, limb and health.''

In view of this section of the statute, in considering the instruction under investigation, we ask, Did the appellant know that the continued breathing of the dust and fumes, as complained of, was injurious to the workmen? If appellant did not so know, could it by the exercise of reasonable

care and caution in the premises have so known? If it did know of the poisonous nature, and deleterious effect of these gases and dust on workmen, and permitted their continued exposure thereto, it was negligent, as a matter of law, under the foregoing statute.

6. If it did not have actual knowledge of the foregoing facts, but by the exercise of reasonable care in the premises could have so known, and yet permitted the continuation of such dangerous condition, as to which condition the jury were told in said instruction that they must find as a fact, "That said partition was allowed by defendant to become in disrepair and was not properly constructed * * * and that the doors and windows were left open so that dust * * * was allowed to arise and blow through said crevices and cracks and said doors and windows in said partition, into and upon the workmen, and the plaintiff, at work in said blowing room," then, this fact being found against appellant, it was guilty of negligence in not so ascertaining that fact, and in permitting further unnecessary exposure of its employes thereto.

This instruction is not open to the objections urged against it.

The appellant also complains of the fourth instruction given. This instruction relates to the allegations found in the second paragraph of plaintiff's complaint, and is as follows: "No. 4.

7. * * * That the plaintiff, being required to work in said blowing room of the defendant's factory where said dust, fumes and gases were blown in upon him, inhaled the same, and as a result of said negligence of said defendant, as aforesaid, the plaintiff became weak and sickened, and his general health was

bad, and that while in said general run-down condition caused by the breathing of said gases and fumes and dust, so blown in upon him by the negligence of said defendant, the said plaintiff was required to and did work in a place where he was exposed to intense radiated heat upon his eyes and body, and that while in said condition of bad health, caused as aforesaid, the said intense radiated heat caused him to contract the disease of cataract of the eye, from which he suffered, *and that it was negligence upon the part of the defendant to allow and compel him to work in said place where his eyes were being subjected to said radiated heat while in said run down physical condition,* and that being compelled to work in said place where he was exposed to said radiated heat was liable to and would cause cataract of the eye; and that the said defendant was negligent in so compelling the said plaintiff to work at said place where he was exposed to said radiated heat while he was in such run-down condition in health as aforesaid. (Our italics.)    *   *   *   *

"The court instructs you that it is not necessary that the plaintiff shall prove each and every one of these acts of negligence on the part of the defendant. If he has proven any one or more of them that will be sufficient, so far as proving the acts of negligence on the part of the defendant is concerned; and if the plaintiff has so proven by a preponderance of the evidence any one of said acts of negligence, and you find that as a result of said negligent acts and as a proximate result thereof, the plaintiff has suffered ill health and finally was affected by having cataracts form on his eyes, and the plaintiff has proven the other material allegations and averments of his complaint by

a preponderance of the evidence, then he would be entitled to recover whatever damages you may find he has suffered by reason thereof.''

It will be noted that this paragraph of complaint, as set forth in said instruction, does not charge any knowledge on the part of defendant as to plaintiff's run-down condition in health. It is simply and broadly charged that defendant was guilty of negligence in causing plaintiff to work where he was exposed to this ''intense radiated heat'' at a time when plaintiff was in such run-down condition of health.

We know of no statute in this state prohibiting such request, or order, from employer to laborer in his employ, and yet the effect of this instruction is to make the giving of such order, under the circumstances as alleged in said paragraph of complaint, negligence *per se*. The question was one of fact for the determination of the jury, not the court, and, for this reason, this instruction was erroneous. *American Hominy Co.* v. *LaForge* (1916), 184 Ind. 600, 111 N. E. 8.

Appellant also complains of the fifth instruction, given by the court to the jury, because, it says, this instruction ignores the custom, which was shown by evidence, among glass-blowers, and in this occupation, which custom was that glass-blowers were customarily required, after their day's work, to assist in setting broken pots.

We hold that this instruction is not open to any of the objections urged against it.

The appellant also complains of instruction No. 7, given by the court to the jury. This instruction was directed to and covered the one proposition 8. only of plaintiff's predisposition to cataracts of the eyes, and told the jury ''that, if they

should find from the evidence that plaintiff was so predisposed, yet, if they found that plaintiff had suffered the injuries complained of while working for the defendant, as hereinbefore set forth, then the fact that he was so predisposed to have cataract would not be a defense in this case.''

The expression, *as hereinbefore set forth,* has relation back to the foregoing instructions. It covers and relates to all of them. It covers and relates to the allegation of the plaintiff set forth in the second paragraph of his complaint, and also set forth in instruction No. 4, as given by the court concerning his being directed by defendant to work while in a ''general run-down condition'' of health, and was too broad. The jury could find, under this instruction, that, although the plaintiff was predisposed to have cataract of the eyes, yet, if he was required to do some certain work—gathering glass from the furnace— which was his regular work part of the time while employed by defendant, where his eyes and body would be exposed to intense radiated heat, which, with his ''general run-down condition,'' caused the cataracts to which he was predisposed to develop, yet, they might find for the plaintiff and against the defendant, and this, whether the defendant at that time had any knowledge of plaintiff's ''general run-down condition,'' and predisposition to cataracts or not.

This instruction being predicated upon *other* instructions theretofore given, by reference, if any of the instructions upon which it is so predicated, by reference, is bad, that fact renders the instruction in question bad. We have already held that the fourth instruction given was erroneous, hence there was

error in giving the seventh instruction, above complained of.

Complaint is made of the ninth instruction given. This instruction, while not worded as accurately as it might have been, we think is a fair statement of the proposition of law involved therein, and not open to the objections urged against it.

The judgment in this case is reversed, and the trial court is directed to grant a new trial.