## ILLINOIS STEEL COMPANY V. FULLER

[No. 27,253. Filed November 6, 1939. Rehearing denied December 11, 1939.]

*Hanley & Hanley, Knapp, Allen & Cushing, Bomberger, Peters & Morthland,* and (*Harlan L. Hackbert,* of counsel), for appellant.

*Gavit & Richardson,* for appellee.

SHAKE, J.—This is an appeal from a judgment in damages in favor of appellee for an alleged occupational disease contracted by him through appellant's negligence. The errors assigned are, that the trial court erred in overruling the demurrer to the complaint and in "refusing to grant" appellant's motion for a new trial.

Liability was asserted under the Indiana Employers' Liability Law. § 40-1101 Burns' 1933, § 10100-1 Baldwin's 1934. Negligence was predicated upon the alleged failure of the appellant to supply appellee with serviceable gas masks, as required by Section 40-1011

Burns' 1933, § 10085 Baldwin's 1934, and in failing to provide appellee's work place with sufficient means of ventilation, as required by Section 40-1013 Burns' 1933, § 10072 Baldwin's 1934.

The issues of law were: (1) whether an action for occupational disease may be maintained under our Employers' Liability Law; and (2) whether the statutes requiring an employer to supply serviceable gas masks and to provide sufficient means of ventilation are so vague and indefinite as to deny due process, under the 14th Amendment to the Federal Constitution, or constitute a delegation of legislative power, in violation of Article 3, Section 1, of the Constitution of Indiana. The issues of fact were: (1) whether appellee was suffering from benzol poisoning or its results; and (2) if so, whether such poisoning was proximately caused by the negligence of the appellant.

Appellee has suggested that the assignment that the court below erred in "refusing to grant" appellant's motion for a new trial does not present anything for review, because, under Rule 18 of this court and the established practice of this state, such an assignment must be based upon the "overruling" of the motion for a new trial. In the case of *The Board of Commissioners of Harrison County* v. *Byrne* (1879), 67 Ind. 21, this court held sufficient an assignment that "the court below erred in not granting a new trial." We regard appellee's contention as highly technical and hold that the assignment under consideration is not improper.

We shall first consider whether an action on account of occupational disease occurring prior to the enactment of The Indiana Workmen's Occupational Diseases Act (Acts 1937, Ch. 69, p. 334, § 40-2201 Burns' 1939 Pocket Supp., §§ 16499 et seq. Bald-

win's Supp. 1937) could be maintained under the Employers' Liability Law. The paramount purpose of the Employers' Liability Law seems to have been to restrict the use of the defenses of contributory negligence, assumption of risk, and negligence of a fellow servant. As to the duties imposed upon those coming within its terms, it has been said that the act is declaratory of the common law. *Emerson Brantingham Co.* v. *Growe* (1922), 191 Ind. 564, 572, 133 N. E. 919. While it has been disputed, the weight of authority sustains the view that an action for negligence resulting in damages from an occupational disease was known to the common law. The cases bearing on that subject have been carefully collected and annotated in 105 A. L. R. 80. In the case of *In re: Jefferies* (1938), 105 Ind. App. 349, 352, 14 N. E. (2d) 751, our Appellate Court said that, "in the enactment of the Workmen's Occupational Diseases Act, the legislature created new rights and remedies not theretofore existing under the common law or statutes of this state." But, it may be observed that the Jefferies case was an appeal from the Industrial Board of Indiana, in which class of cases no right of transfer to this court is recognized under the prevailing practice. To the extent that the Workmen's Occupational Diseases Act authorizes compensation for occupational diseases not caused by the employer's negligence, it is true that said act created new rights not theretofore existing under the common law or statutes of this state, and it does, of course, create distinctly new remedies. We do not recognize In re: Jefferies as authority for the conclusion, however, that a common law action for the negligence of an employer, resulting in an occupational disease, could not have been maintained in this state prior to the compensation act of 1937.

184

As a corollary to what we have said, it must follow that the Employers' Liability Law embraces injuries from occupational diseases unless these are excluded by its terms. The title and body of the act purport to make it applicable to liability for *injuries,* rather than to accidental injuries. The word "injury" is a generic term of broad designation. As applied to the human body it may result from other causes than trauma. Disability from an occupational disease may be no less an injury than one resulting from accident. While the applicability of the Employers' Liability Law to occupational diseases does not seem to have been specifically considered by this tribunal, in at least three cases judgments obtained thereunder have been sustained by our Appellate Court. *McBeth-Evans Glass Co.* v. *Brunson* (1919), 70 Ind. App. 513, 122 N. E. 439; *Nat. Rolling Mill Co.* v. *Heishman* (1924), 80 Ind. App. 673, 141 N. E. 470; *General Printing Corp.* v. *Umback, Admx.* (1935), 100 Ind. App. 285, 297, 195 N. E. 281. In the last mentioned case that court said:

> "It is the contention of appellee, that her decedent died as the result of an occupational disease * * * as a proximate result of appellant's negligence and failure to comply with the Employer's Liability Act, *supra.* If appellee's contention is correct, then her remedy for redress would be under the common law as supplemented by the Employer's Liability Act, and not by resort to the Workmen's Compensation Act. * * *"

The first issue of law stated above is resolved in favor of the appellee.

Appellant has attacked the constitutionality of the legislative acts upon which the charges of negligence contained in appellee's complaint are based. Section 1, Chapter 39, Acts 1919, § 40-1011 Burns' 1933, § 10085 Baldwin's 1934, requires

employers of workmen employed in any enclosed room or structure, in which there may be dangerous, noxious, or deleterious gases, "to supply such workmen with *serviceable gas masks,* to be worn while such work is being performed." (Our italics.) Section 15, Chapter 142, Acts 1899, § 40-1013 Burns' 1933, § 10072 Baldwin's 1934, provides that "there shall be *sufficient means of ventilation* provided in each workroom of every manufacturing or mercantile establishment." (Our italics.) Violations of the above provisions are charged as the proximate causes of the appellee's injuries. Appellant urges that the requirements that the employer shall supply "serviceable gas masks" and shall provide "sufficient means of ventilation" are so vague, indefinite, and uncertain as to be unenforceable; that to enforce these provisions would result in a denial of due process of law; and that to do so would amount to an unconstitutional delegation of legislative power to courts and juries.

Courts are always reluctant to strike down legislative enactments, especially when they have been long acquiesced in, and he who raises the question of constitutionality must assume the burden of making it clearly appear. When it is asserted that a statute is so indefinite that its enforcement would result in a denial of due process or amount to an unauthorized delegation of legislative functions, the court must consider the enactment in the light of the problems with which the Legislature was undertaking to deal. Meticulous exactitude and absolute precision is rarely attained, nor is it required, in the drafting of statutes of this character. It may be observed that in the adoption of the gas mask and ventilation statutes here under consideration, the General Assembly was undertaking to impose safety measures with respect to factories, establishments, and

industries of many kinds. For example, masks that would be serviceable and a means of ventilation that would be sufficient in a gaseous mine might be wholly unsuited or inadequate in a factory where poisonous chemicals or explosives were manufactured, or vice versa. It would, no doubt, be impossible to prescribe by law definite specifications as to what particular type of gas mask or what peculiar means of ventilation would be serviceable and sufficient under all the varying circumstances to which these acts are applicable; and if there is an inflexible and comprehensive rule for determining when statutes of the character of those now under consideration meet the requirement of due process, our attention has not been called to it. Perhaps it is enough to say that such statutes are valid when they clearly designate the dangers and hazards against which the Legislature sought to provide protection and reasonably indicate the means or methods by which that is to be accomplished.

We are not altogether without the guidance of persuasive precedents in dealing with this problem. In *Jeffersonville Mfg. Co.* v. *Holden* (1913), 180 Ind. 301, 102 N. E. 21, and *Marietta Glass Mfg. Co.* v. *Pruitt* (1913), 180 Ind. 434, 102 N. E. 369, this court considered the validity of a statute of this state requiring certain machinery when used in factories to be "properly guarded." There, as here, it was urged that the requirement was unconstitutional and void for indefiniteness and uncertainty. In the first of the above cases, Spencer, C. J., said for this court (p. 305) :

> "What the size or shape of such guard shall be is not specifically stated in the statute which requires only that it shall be proper, and the term 'proper' as thus used means fit, suitable, appropriate. The statute is not subject to the criticism of appellant."

The appellant asserts that the Supreme Court of Illinois has considered comparable statutes and reached the conclusion that they were void for uncertainty. Our attention is directed to *Parks* v. *Libby-Owens-Ford Glass Co.* (1935), 360 Ill. 130, 195 N. E. 616; *Boshuizen* v. *Thompson & Taylor Co.* (1935), 360 Ill. 160, 195 N. E. 625; *Vallat* v. *Radium Dial Co.* (1935), 360 Ill. 407, 196 N. E. 485; *Novarro* v. *Illinois Steel Co.* (1935), 360 Ill. 483, 196 N. E. 489. An examination of these cases reveals that the statutes there before the court provided for the use of "reasonable and approved devices." The Illinois court significantly pointed out that there were no provisions for the approval of the devices contemplated. On that proposition alone these authorities may be distinguished from the case at bar. *In Railroad Com., etc.* v. *Grand Trunk, etc., R. Co.* (1913), 179 Ind. 255, 100 N. E. 852, this court likewise held invalid a statute of this state requiring railroads to use an "approved block system," because the act did not disclose who was to approve the system. We find no basis for the claim that the gas mask and ventilation statutes, upon which the allegations of negligence were based, are unconstitutional.

The first issue of fact tendered by the record is that of the sufficiency of the evidence to establish that appellee was suffering from benzol poisoning. Appellee relies exclusively upon the testimony of Dr. Carlon R. Hills, his attending physician. From the deposition of Dr. Hills it appears that he is a graduate in medicine of the University of Michigan and that he had practiced his profession for eighteen years, specializing in internal medicine. He began treating the appellee a few days after the latter became disabled, in July, 1936, and continued such treatment until the time of the trial, which occurred in October, 1938. The doctor testified that

his first diagnosis was that of acute arthritis, probably of an infectious nature; that appellee did not respond to the recognized treatment for that condition; and that he subsequently concluded that the disability was due to a toxic condition, resulting from some form of poisoning. He further stated that appellee's condition was consistent with a case of benzol poisoning and that he believed that such was the cause of the disability. On cross-examination the doctor stated that this was the first case of benzol poisoning that had come under his observation during his medical practice and that his knowledge of the subject was derived primarily from books. There was an objection to the doctor stating his opinion of the cause of the appellee's disability, upon the ground of his lack of qualifications to do so. The objection was overruled and the evidence summarized above was allowed to go to the jury.

It is the contention of the appellant that there was error in the admission of the testimony of Dr. Hills with respect to the cause of the appellee's disability. It is asserted that the fact that the witness was a physician did not necessarily qualify him to testify as an expert on benzol poisoning; that it was not shown that the books which he had read were standard authorities or reliable sources of information; and that it was an abuse of discretion on the part of the trial court to admit this evidence.

In the first place, it does not appear that Dr. Hills testified solely as an expert witness. He was appellee's personal and attending physician and we know of no rule that prohibits a doctor, occupying that relationship, from expressing an opinion, based on observation, examination, and knowledge, of the subject as to the cause of his patient's disability. The case is quite different from that of an expert who

testifies with respect to hypothetical facts. We do not believe the rule to be that a physician can only be permitted to express an opinion relative to the cause of a disease when he has had actual experience in dealing with such a case. The true rule appears to be fairly stated in the case of *Isenhour* v. *State* (1901), 157 Ind. 517, 528, 62 N. E. 40, 44, 87 Am. St. Rep. 228, in which this court said:

> "Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule, in such cases, in this State at least, seems to be that where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of a sound discretion, the right to say when such knowledge is shown, and to the jury the right to say what the opinion is worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused."

The testimony of Dr. Hills comes fairly within the above rule. While it was not shown that the books that he had read were standard authorities, that is only one of the many sources of information that a physician may call into play when he is asked to give his opinion as to the cause of the condition of a patient who has been under his personal observation. No abuse of discretion is shown in the admission of the testimony of Dr. Hills, since appellant's objections went only to the weight to be accorded it.

The appellant was engaged in the manufacture of steel and for that purpose made and used large quantities of coke. The coke oven gas was conserved and

reduced to crude benzol. A three-story building was maintained to refine the crude benzol into a salable product. This building contained large tanks, into which the crude benzol was deposited. The contents were then treated with sulphuric acid and mechanically agitated. This process caused the impurities to settle in the bottom of the tanks and it was appellee's duty, from time to time, to drain off these impurities through open troughs into another structure. It was admitted that benzol fumes escaped when this was done.

To meet the charges of negligence the appellant showed that it kept gas masks for use in its establishment whenever and wherever they were needed. These masks were stored in a toilet or washroom in the office building, a separate structure located some 25 or 30 feet from the entrance to the agitator building where the appellee worked. Whether, under these circumstances, the appellant may be said to have supplied a gas mask to the appellee, as contemplated by the statute, was a question of fact for the determination of the jury, and its conclusion that such was not done can not be disturbed on appeal. It may be observed, parenthetically, that appellant's claim that it supplied appellee with a serviceable gas mask is at variance with its proposition of law that the statute requiring this to be done is so indefinite and uncertain as to be impossible of performance.

The evidence as to the sufficiency of ventilation in the agitator building and room where the appellee worked was highly conflicting. It was shown that provision had been made by means of windows and vents for the natural circulation of air. There was evidence that this was insufficient and that the situation could have been rendered less hazardous and

the injury avoided by means of fans and glass enclosures which would not have impaired the efficiency of the plant. Since there was some proof to this effect, a question of fact was presented to the jury and it can not be said that there was a total lack of evidence to sustain the verdict. The defendant below also sought to establish that its practices with respect to the ventilation of the agitator room were standard in the industry throughout the country. Such evidence is important when a violation of a common law duty to exercise care is charged, but it is to be remembered that the allegations of negligence in this case rest upon the alleged violation of a positive statute. Nothing less than a good faith compliance with the statute would relieve the appellant from liability for the proximate consequences of its violation. Finally, appellant contends that there was a failure of proof as to its knowledge, actual or implied, of the existence of any hazard due to a lack of ventilation. There was evidence that for a time appellant required a fellow workman to be with appellee when he drained the agitator tanks; that appellee had been overcome by gas fumes on a previous occasion; and that he had talked with his superiors about the conditions. This constituted some evidence of knowledge on the part of the employer and was sufficient to take that issue to the jury.

While, as pointed out above, there was a conflict in the evidence as to practically every material allegation of the complaint, there is no such lack of proof as would warrant this court in disturbing the verdict of the jury.

The death of the appellee having been suggested during the pendency of this appeal, the judgment is affirmed as of the date of submission.