### ROWE v. GATKE CORPORATION.
### No. 7793.

Circuit Court of Appeals, Seventh Circuit.
Feb. 21, 1942.

Rehearing Denied March 27, 1942.

J. Edward Headley, of Warsaw, Ind., and Walter R. Arnold, of South Bend, Ind., for appellant.

Orie Parker, of South Bend, Ind., and M. L. Gochenour, of Warsaw, Ind., for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff filed suit in the Kosciusko Circuit Court of Indiana against the defendant. The case was removed by the defendant to the District Court for the Northern District of Indiana on the ground of diversity of citizenship.

The complaint was in three paragraphs. The first was based on the common law, and alleged that through the defendant's negligent failure to furnish a safe place to work, in that the room in which the plaintiff was compelled to work was not ventilated or provided with sufficient ap-

pliances to remove the asbestos dust from the room, he contracted the disease of asbestosis and is now permanently disabled as a result of that disease.

The second paragraph is based upon acts of negligence in that the defendant violated the Factory Act and the Employers' Liability Act by failing to ventilate properly the room in which plaintiff was compelled to work and by failing to provide exhaust fans of sufficient power to carry off the dust as required by statute, and to furnish the plaintiff with serviceable masks or other devices to protect him from the dust laden with asbestos particles that was ever present in the room, and alleged that he thereby contracted the disease of asbestosis and became totally disabled.

The third paragraph alleged the defendant was negligent in its failure to provide adequate ventilation and sufficient exhaust fans, in violation of the Factory Act and the Employers' Liability Act, and failure to furnish serviceable masks, and as a result, plaintiff contracted asbestosis and is now totally disabled, and since the defendant elected not to come under the provisions of the Occupational Diseases Act, Burns' 1933, § 40-2203, the defendant is under this act liable to the plaintiff.

The defendant did not challenge in any manner the sufficiency of the complaint. It answered denying the material allegations thereof, and pleaded as a defense the statute of limitations, and contributory negligence.

The case was tried by the court without a jury. The court filed findings of fact and stated its conclusions of law thereon in favor of the plaintiff, and entered judgment accordingly. A motion for a new trial was filed and overruled. The case as presented here raises the question of the sufficiency of the evidence to support the court's findings, and asserts error in the admission of certain evidence.

Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we are bound by the findings of the District Court unless "clearly erroneous." We have examined this record very carefully and we are of the opinion that the court's findings are not only not erroneous but that they are supported by an abundance of competent evidence.

The so-called Factory Act of Indiana, Burns' 1933, §§40-1001 to 40-1019, provides: "Exhaust fans of sufficient power

64

shall be provided for the purpose of carrying off dust from emery wheels and grindstones and dust-creating machinery from establishments where used." § 40-1005.

The Act further provides the cubic feet of air space in a workroom and then has the general provision: "There shall be sufficient means of ventilation provided in each workroom of every manufacturing or mercantile establishment," etc. § 40-1013.

We do not find any statute that requires the employer to furnish serviceable masks except Burns' 1933, § 40-1011, which provides they shall be furnished where workmen are required to work in any enclosed room where "there may be accumulations of dangerous, noxious or deleterious gases." There is no claim that there was any gas here, but only dust.

Under the Employers' Liability Act, Burns' 1933, 40-1101 to 40-1114, a corporation employing five or more persons is liable to an employee injured by its negligence, and it provides further that in such cases contributory negligence shall be a defense and the burden of proving it is upon the employer; and where the injury is caused, among other things, by the violation of a statute enacted for the protection of the employee, the employee cannot be held guilty of contributory negligence by reason of the assumption of the risk. Thus it will be seen that the three causes of action stated in the complaint are founded respectively upon the alleged violation of a common law duty, the violation of the Factory Act and the Employers' Liability Act, and the violation of the Factory Act, the Employers' Liability Act and the Occupational Diseases Act.

■ It would seem that under the common law of Indiana an action can be maintained for damages due to an injury received as a result of an occupational disease caused by the negligence of an employer. Illinois Steel Co. v. Fuller, 216 Ind. 180, 23 N.E.2d 259. Certainly the right has been widely recognized by other courts throughout the United States. See 105 A.L.R., note p. 88. However, the plaintiff's right to recover is not based upon the common law alone. In Indiana it seems clear that where the employer has violated some statute enacted for the protection and safety of the employee and as a result thereof the employee contracts an occupational disease and is injured thereby, such

employee has a cause of action. Illinois Steel Company v. Fuller, supra; Dean v. Dalton Foundries, Ind.App., 34 N.E.2d 145; General Printing Corp. v. Umback, 100 Ind.App. 285, 195 N.E. 281.

■ Were the causes of action stated in the complaint sustained by sufficient evidence? The court found that the defendant had negligently failed to furnish the plaintiff a safe place to work and that in violation of the statutes of Indiana it had negligently failed to provide adequate exhaust fans or ventilating systems for the purpose of removing the asbestos dust in which the plaintiff worked. The court further found that the respirators or masks furnished by the defendant were inadequate to keep out of the plaintiff's lungs and respiratory system the asbestos particles which caused the disease of asbestosis, and the plaintiff was not guilty of contributory negligence.

The evidence to support these findings is as follows:

The plaintiff had been regularly employed by the defendant from 1930 to September 14, 1937. The room in which he worked was sixty feet by forty feet and was used, among other things, as a storage room for bales of asbestos. Such material was stacked to the ceiling and in front of the windows. The windows were kept closed so the asbestos material would keep dry, and therefore work better. A small space was left between the stacks of stored material where two machines used to cut and pulverize asbestos material were operated by the plaintiff. That was his job and he worked eight hours per day, but just how much of the time the machines were in operation does not appear. The operation caused an enormous amount of dust, and that dust was heavily laden with particles of asbestos. Although standardized equipment for the removal of dust was available, the defendant installed crude devices constructed by its maintenance crew, the members of which were not qualified as experienced sanitary or ventilation engineers. One of the installations was a cyclone system, which operated on the suction principle and was connected to the rear end of the cutting machine. This system collected dust and deposited it in burlap bags in the room. Any dust particle small enough to escape the mesh of a burlap bag was not confined. Later there was installed a blower device connected to the cutting machine, which had a fan that blew the dust into a pipe which led outside.

When the wind blew in the direction of the pipe, the dust was blown back in the room. These devices were in operation only a few months each. With them working, the room was still saturated with dust. The dust became so thick in the room it collected and hung all over the interior. It was so thick at times that from a distance of twenty feet one could not recognize who was operating the machine. The plaintiff at the end of a day's work appeared almost beyond recognition, covered with shreds that hung on him like whiskers, so that he looked like a "polar bear."

The respirators furnished by the defendant were insufficient to keep out the asbestos particles, even if the plaintiff had worn them continuously. The instruction card accompanying one of the respirators said it would not keep out the fine asbestos particles. The plaintiff never saw these instructions.

Another form of mask provided by the defendant did not fit the plaintiff's face and left large spaces for the entrance of dust.

The evidence showed that the plaintiff wore these masks while the machines were being operated. Some fellow employees testified he wore the masks all the time. Others testified they had seen him when he was not wearing the mask.

The plaintiff worked day after day for years in this dust-filled room and inhaled the asbestos particles into his lungs, and thereby contracted asbestosis, from which he is now permanently and totally disabled. The defendant had knowledge since 1930 of the dust-laden condition of this room and the latent danger to the plaintiff, who was working continuously in the room. The plaintiff had no knowledge of the danger to which he was exposed in the dust-filled room, except such as would ordinarily occur to a workman.

These facts were ample to sustain the court's finding of a negligent violation by the defendant of the Factory Act, the Employers' Liability Act and the Occupational Diseases Act.

Since the employer was guilty of a violation of the Factory Act, it was, under the Employers' Liability Act, deprived of the defense of an assumption of risk, and the burden of proving the plaintiff guilty of contributory negligence was placed upon the defendant. Burns' 1933, 40-1102 and 40-1103. The question of contributory negligence was one for the trial court. The trial court found the plaintiff free from contributory negligence and we think the evidence supports the court's finding.

Under the Occupational Diseases Act, the violation by the employer of any statute of Indiana which was enacted to protect the health of the employee was an act of negligence, and in an action for such negligence, unless the employee had rejected the act, the defense of assumption of risk and the fellow-servant rule were taken from the defendant employer; and contributory negligence was not a defense unless such contributory negligence was wilful. Burns', 1933, § 40-2203. The plaintiff had not rejected the Act.

We do not think the evidence shows as a matter of law that the plaintiff was guilty of wilful misconduct. Again it was a question for the trial court, and we do not think its finding that the plaintiff was not guilty of contributory negligence is clearly erroneous. We think it is amply supported by the evidence. The sole reliance of the defendant to find the plaintiff guilty of contributory negligence is its contention that the plaintiff did not wear the respirators furnished him by the defendant. The evidence is undisputed that these respirators would not keep out the asbestos particles that caused the disease that disabled the plaintiff. The failure to wear a respirator, which it is shown by all of the evidence would not have kept out the asbestos particles that caused the disabling disease, could not amount to contributory negligence. The evidence of some of plaintiff's fellow employees was that he always wore the respirator. The plaintiff himself said that he always wore the respirator while the machine was operating. When admonished by a factory inspector of the State of Indiana that he should wear the respirator all the time, the plaintiff responded: "Well, I have it on only when the machine is in operation." There is no evidence as to how much of the time the machine was in operation or how much of the time the plaintiff failed to wear the respirator. There is no evidence that defendant furnished or offered to furnish a respirator that would remove the dust particles that caused the disabling disease of asbestosis.

The occasional failure of the plaintiff to wear an inefficient respirator cannot as a matter of law be said to constitute contributory negligence so as to defeat the

plaintiff's right of recovery under the Employers' Liability Act. Nor did such failure constitute wilful misconduct within the meaning of the Occupational Diseases Act. "Wilful" means more than intentional and occasional breach of duty. "Wilful misconduct" means a deliberate purpose not to discharge some duty necessary to safety. It implies obstinancy, stubbornness, set purpose, and conduct that amounts to deliberate bad faith, quasi-criminal in its nature. Coal Bluff Mining Co. v. McMahon, 54 Ind.App. 131, 102 N.E. 862; General American Tank Car Corp. v. Borchardt, 69 Ind.App. 580, 122 N.E. 433.

From 1930 to Sept. 14, 1937, when the plaintiff's employment terminated, the plaintiff had no knowledge of the presence of the danger that lurked in the asbestos particles in the unventilated room in which he worked, except such as the working conditions might indicate to an uninformed workingman. Since this condition was due to the defendant's negligence in violation of the Employers' Liability Act, this risk he did not assume so as to charge him with contributory negligence. Burns' 1933, § 40-1102. The District Court found the defendant had not sustained the burden of establishing that the plaintiff was guilty of contributory negligence. We cannot say as a matter of law that the plaintiff was guilty of contributory negligence. The court's finding was not clearly erroneous but is sustained by ample evidence.

The defendant contends the cause of action was barred by the statute of limitations. The Employers' Liability Act, which we have held was violated, provides: "No action shall be maintained under this act unless the same is commenced within two (2) years from the date the cause of action accrued." Burns' 1933, § 40-1108.

The general provisions of the statute provide the same limitation. Burns', 1933, § 2-602.

The Occupational Diseases Act provides: "Any violation by any employer of any law of this state, intended for the protection of the health of employees, shall be and constitute negligence of the employer within the meaning of this section. Every such action for damages for injury to the health shall be commenced within two (2) years after the last day of the last exposure to the hazards of the disease." Burns', 1933, § 40-2203.

In the case at bar, the plaintiff had worked for the defendant from 1930 to September 14, 1937. During that period of employment the plaintiff had been subjected to the wrongful acts of the defendant that continued up to the time of his discharge, which was also the time of last exposure. In December, 1937, the plaintiff learned for the first time of his disablement from a disease which he had contracted as a result of the defendant's wrongful act. On June 18, 1938, he commenced his action against the defendant.

Did the plaintiff's cause of action accrue within two years?

The wrongful act of defendant was a continuing wrong that continued to the date of plaintiff's discharge on September 14, 1937. It was a continuing wrong that produced progressively a disease which when first discovered by the plaintiff in December, 1937, had disabled the plaintiff from eighty to one hundred per cent and by the date of the trial had totally and permanently disabled him.

Under the law of Indiana where, as here, the action is for damages resulting from the various consequences of one continuing wrong, the statute of limitations does not begin until there is a cessation of the overt acts constituting the wrong. Montgomery v. Crum, 199 Ind. 660, 679, 161 N.E. 251.

Since the wrongful acts of the defendant continued until the discharge of the plaintiff on September 14, 1937, the cause of action accrued on that date. This was also the date of last exposure. Under the Occupational Diseases Act, the cause of action accrued at that time. Burns', 1933, § 40-2203. We therefore hold that the cause of action was not barred by the statute of limitations.

The defendant has assigned as error the admission of the following evidence which occurred at the trial in the examination of Dr. Fisher:

"Q. Now what degree of impairment would you say Mr. Rowe has at this time for performing physical labor, as you observed him as a result of the asbestosis as you have described?

"Mr. Arnold: Objection because it calls for the ultimate facts for the decision of the Court.

"The Court: Overruled.

"Mr. Arnold: Exception.

"A.  He is totally disabled.

"The Court:  Is that total disability permanent?

"A.  Yes."

Dr. Fisher was not testifying in response to any hypothetical question. He had thoroughly examined the plaintiff. The examination had been made at the request of the defendant. He had had the plaintiff in the hospital for observation and examination from March 21 to March 24, 1938. He submitted a report to the defendant's counsel of his examination and what he found, and his findings and report are in the record and cover six and one-half pages thereof. This report was admitted by agreement.

Dr. Fisher's report concluded thus:

"Diagnosis:  My diagnosis in the case is pneumoconiosis, pulmonary asbestosis, moderately severe or second degree. Right heart preponderance due to pulmonary.

"Prognosis:  He will continue to get worse. Rehabilitation to farm work does not seem possible. Manual labor will increase the heart hypertrophy. He exhibits total permanent impairment of from 80 to 100% for manual labor."

At the trial on November 6, 1940, Dr. Fisher testified without objection that the plaintiff had:  "a disease called asbestosis. I made an estimate at the time as to the degree of impairment of this plaintiff as a man. I found a total impairment of from 80 to 100 per cent for manual labor. The x-ray pictures show the plaintiff's right lung filled in an area at the left. * * * From what these x-ray exhibits disclose, practically the entire left lung field and the lower left below the heart of the plaintiff is affected by the fibrosis—affected by asbestosis. Examination of the films discloses to me that the fibrocity of the lung scar tissues are more pronounced in the pictures taken this year than those taken in 1938—there was more of a ground glass appearance than two years ago. The greater the fibrosity the more decrease in capacity for physical work. The examination I made of this man, the plaintiff, today, discloses a reduction in his heart expansion from that made in 1938. There has been a decrease of three-eighths of an inch which would indicate that the contraction of his heart is increasing. In other words, he is going in. That affects his lung capacity markedly. * * * He has less ability to perform physical labor now than he had in 1938."

It was at this point the evidence objected to was introduced.

Dr. Van Buskirk, a qualified physician and X-ray specialist, examined the plaintiff December 28, 1937, and at the trial testified as to the plaintiff's condition and that he had asbestosis, and without objection he testified:  "from his physical observation and from the X-rays, that he (plaintiff) was at least 75% incapacitated for manual labor." On cross-examination by defendant's counsel, Dr. Van Buskirk said:

"The estimate I make of his incapacity due to diminution of lung absorptive power of oxygen is based on the X-ray plates and his synotic (sic) condition, that means blue * * * The condition I have described of the plaintiff, in my opinion cannot improve. When a man has asbestosis, I think he is done for."

This evidence, when taken with the plaintiff's evidence as to his condition at the date of the trial, was sufficient in our opinion to have sustained the court's finding without the admission of the evidence complained of. Where there is ample competent evidence to support the findings, even if some incompetent evidence is admitted, it will be treated as harmless and not as reversible error. Louisville, etc., R. Co. v. Falvey, 104 Ind. 409, 3 N.E. 389, 4 N.E. 908; Seymour Improvement Co. v. Viking, etc., Co., 87 Ind.App. 179, 161 N.E. 389. Especially does this rule apply when the case is tried by the court without a jury. Shira v. State, 187 Ind. 441, 119 N.E. 833.

However, we think there is a more substantial ground for denying the defendant's contention. That is that the extent of plaintiff's disability was not the ultimate fact. The ultimate fact was the extent of damage the plaintiff had suffered. In order to find that, the court had to find there was a disability and the extent thereof. These were subsidiary or subordinate facts and not the ultimate fact. From an early day to the present time, it has been recognized by the courts of Indiana that it is entirely proper to permit a physician, speaking as an expert witness, to testify as to the effect and extent of a disability. Louisville, etc., R. R. Co. v. Wood, 113 Ind. 544, 553, 14 N.E. 572, 16 N.E. 197; Evansville & T. H. R. R. Co. v. Crist, 116 Ind. 446, 457, 19 N.E.

310, 2 L.R.A. 450, 2 Am.St.Rep. 865; Bonebrake v. Board, 141 Ind. 62, 64, 40 N.E. 141; Cleveland, etc., R. R. Co. v. Hadley, 170 Ind. 204, 212, 82 N.E. 1025, 84 N.E. 13, 16 L.R.A.,N.S., 527, 16 Ann.Cas. 1; Illinois Steel Co. v. Fuller, 216 Ind. 180, 23 N.E.2d 259; Chicago, etc., R. Co. v. Gorman, 58 Ind.App. 381, 386, 106 N.E. 897; Louisville, etc., R. Co. v. Holsapple, 12 Ind.App. 301, 306, 38 N.E. 1107; Pennsylvania Co. v. Frund, 4 Ind.App. 469, 472, 30 N.E. 1116.

We find no error in the record and the case is affirmed.