**R. Nathalie HALUM, Appellant-Petitioner Below,**

v.

**Ramon G. HALUM, Appellee-Respondent Below.**

**No. 3–884–A–237.**

Court of Appeals of Indiana, Third District.

March 5, 1986.

Marilyn Eve Hrnjak, Merrillville, for appellant-petitioner below.

Richard P. Komyatte, Jason L. Horn, Komyatte & Freeland, P.C., Highland, for appellee-respondent below.

STATON, Presiding Judge.

The marriage of Nathalie (Halum) Heuer and Ramon Halum was dissolved on March 23, 1977, with the decree incorporating a "Marital Property Settlement, Custody, Support, Visitation and Alimony and/or Separate Maintenance Agreement" (agreement) arrived at by the parties. Nathalie appeals the denial of her petition to modify the decree with respect to child support on the grounds that the trial court abused its discretion and erred as a matter of law.[1]

Reversed and remanded.

When the Halum's marriage was dissolved, the couple had four children: N. Renee (Renee), born May 10, 1962; Kurt,

---

1. In her Motion to Correct Errors and in the Statement of Issues in her brief, Nathalie raises 14 issues, which she consolidated and restated much as we have done above. One issue, the trial court's denial of attorney's fees to Nathalie, was waived due to failure to present cogent argument. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

born May 25, 1963; Ramon (Ray), born April 21, 1966; and Michelle, born December 17, 1971. The decree granted Nathalie custody of all four children and made her fully responsible for their support. She was also granted the tax exemption for each child. Ramon was ordered to pay Nathalie "alimony and/or separate maintenance" in the amount of $2400 per month, to abate in the amount of $600 per month as each child should either graduate from high school, die, become emancipated, or be transferred to Ramon's custody. Such payments were to be taxable to Nathalie as income and to be deductible from Ramon's income. Ramon further agreed to provide "all necessary and reasonable expenses incident to an education at a state supported college or university" for each child as appropriate. Under the agreement, Nathalie purportedly waived any right to seek modification of the agreement for purposes of obtaining child support from Ramon. Ramon admitted on cross-examination that the payments he made under the agreement were to support the children.

Since the dissolution decree was entered, several changes have occurred. Two of the children, Renee and Kurt, have graduated from high school, and custody of Ray has been awarded to Ramon. Only Michelle remains with Nathalie. Consequently, Ramon pays Nathalie only $600 per month. Pursuant to the agreement, Ramon has paid all of Renee's college expenses, including tuition, room and board, books and phone bills, and sent her additional spending money in excess of $150 per month. During the summers between school terms Ramon also provided Renee with a job in his office and paid her between $1,000 and $2,000 for her work each summer.

Nathalie, who had no income when the marriage was dissolved in 1977, married Charles Heuer in 1979, and the couple had a joint income of $40,959.37 in 1981, excluding Nathalie's "alimony" payments.

Ramon's individual income in 1976 was $142,344.72, and by 1981 it had risen to $252,829, including the "alimony" payments. His professional corporation had a taxable income of $14,222.08 in 1976 and $42,856 in 1981, with a total income of $246,961.32 and $427,074 for the two years, respectively. Ramon testified that he received a monthly net salary of $7500 to $8500, and that he spent it all each month. It was not clear what amount he spent on his two sons, who lived with him, although he testified that he spent around $900 per month for food for the three of them. Ramon further testified that he takes his sons on an annual two week Christmas vacation to his condominium on Marcos Island, Florida. In 1981 he also took trips to the Philipines and to Lake Tahoe, taking one son on each trip and spending a total of around $4,000. Ramon testified that Michelle is welcome to accompany him and his sons on vacations and dinner outings and has done so in the past. He said that he will continue to invite her along.

On October 1, 1981, Nathalie filed a petition for modification of child support. At trial, she testified that she sought $800 per month to support Renee [2] during summers, and $1,846 per month for Michelle throughout the year.

Modification of child support is within the discretion of the trial court, *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279, 1286, and we will reverse only for an abuse of discretion. Such an abuse of discretion occurs when the trial court's action is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom, *Hayden v. Hite* (1982), Ind.App., 437 N.E.2d 133, 135, or when it is contrary to law. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386, 1388.

While the payments which Ramon was ordered to make to Nathalie under the dis-

---

**2.** Although Renee is now 23 and has presumably finished college, the issue of modification of her support is not moot, since the trial court could backdate the modification order to the date on which the petition for modification was filed. *In re Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315.

solution decree were designated as "alimony" for income tax purposes, it is clear from the manner in which it abates as each child leaves Nathalie's care, and from the testimony of the parties, that they were intended as child support. In setting the amount of child support, according to statute, the trial court is to consider "all relevant factors including:

    (1) the financial resources of the custodial parent;

    (2) standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

    (3) physical or mental condition of the child and his educational needs; and

    (4) financial resources and needs of the noncustodial parent."

West's AIC 31–1–11.5–12 (Supp.1985). Child support provisions shall be modified "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." West's AIC 31–1–11.5–17.

    ■ Nathalie's waiver, in the agreement, of child support and of all rights to seek modification of the "alimony" provision was contrary to law and cannot be enforced against her. The custodial parent may not bargain away the children's right to support, *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, 612, nor can a parent contractually relieve himself of his obligation to support his minor children. *Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385, 1388.

    ■ It is of no consequence that the amount of child support was fixed by agreement of the parties; such agreements are readily modifiable in light of changed circumstances. *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157, 160; *Brokaw, supra.* When considering any petition for modification of child support, whether the support order was based on an agreement or not, the trial court must apply the standard in IC 31–1–11.5–17: whether changed circumstances of a substantial and continuing nature render the original order unreason-

able. The court must look to the totality of circumstances, including the statutory factors listed in IC 31–1–11.5–12. *Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321, 323; *Carlile v. Carlile* (1975), 164 Ind.App. 615, 330 N.E.2d 349, 350–51.

    ■ Ordinarily, we will presume that the trial court considered all of these statutory factors in reaching its decision. *Howard v. Reeck* (1982), Ind.App., 439 N.E.2d 727, 731. The trial court in this case, however, gave great weight to the fact that the support provisions were based on an agreement, and wrote that it would "disturb such an agreement only if absolutely necessary for the welfare of the minor children of the parties." The court made further references to the "actual needs" of the children. It is clear that the trial court did not consider all of the statutory factors, but rather that it applied a standard of absolute necessity.

    ■ Child support should indeed be based on the needs of the children, but these needs must be considered in light of all of the circumstances in the case including the standard of living and the financial resources of the parents. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41, 46; *Marsico v. Marsico* (1972), 154 Ind. App. 436, 290 N.E.2d 99, 102; *Dragoo v. Dragoo* (1962), 133 Ind.App. 394, 182 N.E.2d 434, 438. In *Rohn v. Thuma* (1980), Ind.App., 408 N.E.2d 578, this Court said, "It is well established that a child has a right to be supported in a style consonant with the societal position of his parents. Where circumstances warrant, a child is entitled to more than just the bare necessities of life." *Id.*, at 582.

It is true that the mere availability of money does not require that it be spent, and the trial court has discretion in determining what sort of expenditures a family would have made had it remained intact. *Howard v. Reeck, supra*, 439 N.E.2d at 730. In this case, however, we have evidence as to what expenditures Ramon makes for his two sons who live with him, and the trial court must consider it. Absolute parity among the children is not re-

**34**

quired, but the amounts spent on the two sons are relevant to the standard of living which the children would have enjoyed had the marriage not been dissolved.

The trial court gave consideration to the fact that Ramon has offered to take Michelle along on vacations and outings to "the finer restaurants," and that he testified that he will continue to do so. In its findings, the court stated that it "expected" Ramon to continue this practice. Ramon is certainly free to spend money on his children beyond his obligation to support them. In determining whether the original support amount has become unreasonable, however, the trial court must consider the needs of the children in light of the standard of living they would enjoy, and it may not base the support obligation on their absolute needs while saying that it "expects" the non-custodial parent to maintain the children's somewhat higher standard of living gratuitously. Further, this Court has described the custodial parent as being "entrusted with the duty and right to say how [support] funds shall be spent," and has held that the noncustodial parent may not usurp this right. *Whitman, supra,* 405 N.E.2d at 612–13. It is for the trial court to determine, in light of all the circumstances and statutory factors, an appropriate amount of support, and for Nathalie to determine how it will be spent.

In basing its decision as to the reasonableness of the support provisions solely on the children's absolute needs, rather than on the totality of circumstances, the trial court abused its discretion. We cannot speculate that the court would have reached the same conclusion had it considered all of the circumstances, including the factors listed in IC 31–1–11.5–12. *See In re Marriage of Miles* (1977), 173 Ind. App. 5, 362 N.E.2d 171, 174.

We reverse and remand the cause to the trial court for further proceedings consistent with this opinion.

HOFFMAN, J., concurs.

GARRARD, J., concurs in result.