**Mitchell D. BOZARTH,
Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 49A02–8701–CR–00009.

Court of Appeals of Indiana,
Second District.

March 24, 1988.

Rehearing Denied April 21, 1988.

Reginald B. Bishop, Indianapolis, for appellant (defendant).

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee (plaintiff).

BUCHANAN, Judge.

### CASE SUMMARY

Appellant-defendant Mitchell D. Bozarth (Bozarth) appeals his jury conviction of rape, a class B felony,[1] challenging the constitutionality of the rape statute, the

---

**1.** Ind.Code 35–42–4–1(a)(3) (Supp.1987).

sufficiency of the evidence, claiming his sentence was manifestly unreasonable, and that the trial court erred in sustaining the State's objection to defense counsel's comments during closing argument.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that on the evening of January 30, 1986, Bozarth went to the Goodwill Industries dormitory in Indianapolis and was introduced to A.N., the victim. A.N. was born deaf and legally blind. Although she was 21 years of age, she was mildly retarded with a mental age of approximately 10 years old and an I.Q. of between 50 to 70.

Bozarth was deaf, 24 years old and known to be a quick learner. The Goodwill Vocational Counselor assigned him to the commercial baking training program because he demonstrated the higher functioning capabilities that the program required. The training program exposed him to other students with varying degrees of disabilities and he often explained lessons to those students.

After visiting with another acquaintance at the dormitory, Bozarth went to A.N.'s room and was invited in by A.N. Bozarth communicated with A.N. by sign language and by writing notes. They viewed photographs together, exchanged addresses, and began kissing. Bozarth indicated he wanted sex and asked A.N. to go into her restroom with him. Bozarth took their clothes off. They engaged in sexual intercourse on the floor and while seated on the toilet seat. As Bozarth was leaving, he told a resident of the dormitory that he had sex with A.N. and that her virginity was now gone.

At trial, Mary Stewart, a social worker and employee of Midtown Mental Health Center, testified that A.N. was unable to give consent to sexual intercourse at the time of the incident. A.N.'s understanding of physiology and reproduction was rudimentary and her ability to interpret that knowledge and make choices was the same as a child of 6 or 7 years of age. Even though she had two sex education discussions previous to the incident, A.N.'s evaluation indicated she did not understand the ramifications and nature of sexual conduct. Evidence of A.N.'s inability to consent to sexual intercourse was corroborated by Dr. Alan Schetzer.

The jury returned a verdict of guilty on the rape charge and Bozarth received the presumptive sentence of ten years. His sentence, however was later reduced to six years, upon Bozarth's motion for a modification of sentence.

## ISSUES

Bozarth presents four issues for review:

1. Is I.C. 35–42–4–1(a)(3) unconstitutionally vague?

2. Was there sufficient evidence to support Bozarth's conviction of rape?

3. Did the trial court err in sustaining the State's objection to defense counsel's comments during closing argument regarding the credibility of the State's psychiatric witness?

4. Was Bozarth's sentence manifestly unreasonable?

## DECISION

*ISSUE ONE*—Is IC 35–42–4–1(a)(3) unconstitutionally vague?

*PARTIES' CONTENTIONS*—Bozarth argues IC 35–42–4–1(a)(3) is unconstitutionally vague because it fails to define the terms "mentally disabled or deficient."

The State responds that Bozarth did not follow statutory procedures for challenging the constitutionality of a statute and therefore any error is waived. The State further contends that no fundamental error is presented.

*CONCLUSION*—Bozarth has failed to preserve any objection to the constitutionality of IC 35–42–4–1, and there is no fundamental error.

■ In Indiana, a defendant must challenge the constitutionality of a statute defining a crime by means of a written motion to dismiss filed no later than twenty

days prior to the omnibus date. *Payne v. State* (1985), Ind., 484 N.E.2d 16; *Newton v. State* (1983), Ind.App., 456 N.E.2d 736; *see also* IC 35–34–1–4(a)(11) and (b)(1) (Supp.1987); IC 35–34–1–6(a)(3) and (c). Our review of the record discloses no such motion having been filed in this case.

. While conviction under an unconstitutional statute might well constitute fundamental error, it is not so in this case. The statute in question provides:

"A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

. . . .

(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given

commits rape, a Class B felony."

IC 35–42–4–1(a).

 Legislation under constitutional attack is clothed with a presumption of constitutionality. *Miller v. State* (1987), Ind., 517 N.E.2d 64. A statute will not be found unconstitutionally vague when the language is sufficiently definite to inform a person of ordinary intelligence of a conduct which is prohibited. *Payne, supra; State v. Downey* (1985), Ind., 476 N.E.2d 121. Meticulous exactitude and absolute precision are not required in drafting statutes. *Illinois Steel Co. v. Fuller* (1939), 216 Ind. 180, 23 N.E.2d 259. The specificity that due process requires may be ascertained by reference to the entire text of the statute, to well-settled common law meanings, to prior judicial decisions, to similar statutes, or to common generally accepted usage. *See generally* 21 AM.JUR.2D *Criminal Law* § 17 (1981); 26 I.L.E. *Statutes* §§ 128–30 (1960). If an offense can be made constitutionally definite by reasonable construction, the court's duty is to give the statute that construction. 21 AM.JUR.2D, *supra*, § 17.

This statute is not adrift in a legislative sea of uncertainty. *Stafford v. State* (1983), Ind.App., 455 N.E.2d 402, *trans. denied*, explained that the capacity to consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences. Going one step fur-

ther is *Douglas v. State* (1985), Ind.App., 484 N.E.2d 610, which added that the plain and ordinary meaning of "mentally disabled or deficient" is subnormal intelligence. Finally, the text of the statute itself furnishes an adequate standard of definiteness. The phrase "mentally disabled or deficient" is qualified in the statute by the operative words "that consent to sexual intercourse cannot be given." IC 35–42–4–1(a)(3).

 In light of the overall thrust of the statute, the obvious legislative intent, and our decisions in *Douglas* and *Stafford,* we conclude reasonable persons of ordinary intelligence are capable of discerning the kind of conduct that would generally fall within the proscriptions of this statute. The concept of "mentally disabled or deficient" is not so esoteric as to avoid a consensus of meaning among persons of ordinary intelligence. *Accord State v. Sullivan* (1980), Iowa, 298 N.W.2d 267; *State v. Degrenier* (1980), 120 N.H. 919, 424 A.2d 412.

*ISSUE TWO*—Was there sufficient evidence to support Bozarth's conviction of rape?

*PARTIES' CONTENTIONS*—Bozarth claims the evidence was insufficient to show that A.N. lacked the mental capacity to consent to sexual intercourse and to show that he was aware of her mental deficiency.

The State asserts the evidence was more than sufficient.

*CONCLUSION*—The evidence was sufficient to sustain Bozarth's conviction of rape.

 This court has upheld convictions under this subsection of the rape statute when the evidence indicated the victim was mildly retarded, had a mental age of 6 or 7 years, but understood sex and where babies came from. *Hall v. State* (1987), Ind. App., 504 N.E.2d 298; *Stafford, supra.*

A.N.'s understanding of sexual matters was about that of a child of 6 to 7 years of age. Although the counselors at Goodwill discussed sexual matters with A.N. on two

occasions prior to the incident, she still did not have a normal understanding of sexual matters. Her evaluation at Midtown Mental Health Center indicated she had no ability to interpret the physiological aspects of sex in order to make an informed choice. Whenever A.N. was asked about sexual matters or having a baby, she responded in terms of dating, going to dinner, going on a vacation, and getting permission from her parents. Furthermore, her understanding of the reproductive process was, at best, rudimentary. The factfinder could have reasonably concluded that A.N. was incapable of giving consent to sexual intercourse with Bozarth.

■ The previous Indiana statute governing rape included the element that the defendant knew of the victim's mental condition. IC 35–13–4–3 (repealed 1976); *see also Underhill v. State* (1921), 190 Ind. 558, 130 N.E. 225. This is the majority rule in other jurisdictions. Annot., 31 A.L.R.3D 1227 (1970). Indiana's present statute also includes a "knowing" element. A person "knowingly" engages in conduct when he is aware of a high probability that he is doing so. IC 35–41–2–2(b) (1982). Thus, the actor must be aware of a high probability that the victim is mentally disabled and unable to consent to sexual intercourse.

Bozarth was trained at Goodwill Industries. He was a quick learner and demonstrated good work skills. He was familiar with people of various mental capabilities because of his contact with students in Goodwill's training program. A.N.'s disability was obvious. Bozarth's awareness of A.N.'s disability is further demonstrated by his making fun of her and his parting remark to another resident of the dormitory that he "busted her cherry." *Record* at 335.

*ISSUE THREE*—Did the trial court err in sustaining the State's objection to defense counsel's comments during closing argument regarding the credibility of the State's psychiatric witness?

*PARTIES' CONTENTIONS*—Bozarth claims that his counsel was improperly restrained from commenting on the character

and credibility of the State's psychiatric witness.

The State counters that the trial court did not abuse its discretion in precluding Bozarth's counsel from commenting on matters unrelated to the evidence presented.

*CONCLUSION*—The trial court did not err in sustaining the State's objection to defense counsel's comment in his closing argument regarding the credibility of the State's psychiatric witness.

■ The pertinent part of the argument that was stricken was as follows: "[t]his is the same profession that in Washington, D.C. a few years ago managed to convince a jury that it was okay for a man called Hinkley to shoot the President." *Record* at 733. The conduct of final argument is within the sound discretion of the trial court. *Brady v. State* (1984), Ind., 463 N.E.2d 471. Reference in final argument to facts not in evidence is improper. *Hovis v. State* (1983), Ind., 455 N.E.2d 577; *see also Johnston v. State* (1988), Ind., 517 N.E.2d 397. In the present case, counsel's comment was not in reference to any fact in evidence and as such was improper. The trial court properly exercised its discretion in striking the comment and admonishing the jury.

*ISSUE FOUR*—Was Bozarth's sentence manifestly unreasonable?

*PARTIES' CONTENTIONS*—Bozarth alleges that the presumptive sentence imposed was manifestly unreasonable and that the trial court failed to consider mitigating factors.

The State observes that Bozarth's sentence was subsequently modified and reduced to a term of six years, the minimum sentence for the crime charged.

*CONCLUSION*—Bozarth's contention that his sentence of ten years of imprisonment was excessive and manifestly unreasonable is moot.

On October 9, 1986, Bozarth filed a motion for modification of his sentence pursuant to IC 35–38–1–17 (Supp.1987). *Record* at 146. On October 29, 1986, after conducting a hearing, the trial court granted the

motion and modified the sentence by reducing it from ten years to six years. *Record at 155.* Six years is the minimum sentence which can be imposed for a class B felony. IC 35–50–2–5 (1982). No justiciable question is presented by this issue. 1 I.L.E. *Appeals* § 3 (1957).

The judgment is affirmed.

SULLIVAN and CONOVER, JJ., concur.