Rolland Phillip NEUDECKER, Appellant (Petitioner),

v.

Wendy Elizabeth NEUDECKER, Appellee (Respondent).

No. 79A02–8912–CV–649.

Court of Appeals of Indiana, Second District.

Feb. 13, 1991.

Margret G. Robb and Cynthia L. Garwood, Bartlett, Robb & Sabol, Lafayette, for appellant.

Carolyn S. Holder, Holder and Davis, Lafayette, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Petitioner-appellant Rolland Neudecker (Rolland), a divorced father, appeals from the modification of a child support order claiming the trial court erred when it (1) modified his support obligation, (2) when it ordered him to pay his daughter's college expenses, (3) when it determined he was in contempt of court for failing to pay child support, and further, that the statute allowing the trial court to award educational expenses violated his due process and equal protection rights.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that Rolland's marriage to Wendy Neudecker (Wendy) was dissolved on October 3, 1975. Rolland was ordered to pay $45 per week as child support for the two children born of the marriage. Wendy filed a petition to modify the support order on August 15, 1988, seeking an increase in support, educational expenses for the parties' oldest daughter, and asking that Rolland be held in contempt for failing to pay his previous child support obligation.

At the time Wendy sought modification, she was working as a nurse and earned approximately $31,000 per year. Rolland, working as a mortgage broker, earned approximately, $229,000 in 1987 and $195,000 in 1988. In October of 1988, Rolland lost his job and became self-employed as a consultant and independent broker. Rolland and his second family resided in Laguna Hills, California, and maintained a condominium in Park City, Utah. The parties' oldest daughter had applied to and been accepted at the University of Kansas.

A hearing was held on July 24, 1989. The trial court entered its modification order on August 22, 1989. The order determined that Rolland was in contempt of court for failure to pay $4,120 in child support, and that he could purge his contempt by paying that amount. The order also increased his monthly child support obligation to $1,043.90, retroactive to September 1, 1988. Rolland was also ordered to pay his eldest daughter's college expenses and $1,000 of Wendy's attorney's fees.

## ISSUES

Rolland presents several issues which we consolidate as:

1. Whether the trial court abused its discretion when it modified Rolland's child support obligation?

2. Whether the trial court erred when it determined Rolland was in contempt for failing to pay child support?

3. Whether the statute authorizing the award of college expenses as child support violates Rolland's due process and equal protection rights?

## DECISION

*ISSUE ONE*—Did the trial court err when it modified Rolland's child support obligation?

*PARTIES' CONTENTIONS*—Rolland argues that the evidence was insufficient to demonstrate a substantial change in circumstances had occurred, and that the amount of the child support award was also not supported by the evidence. Rolland also claims that the trial court erred in including his eldest daughter's college expenses in the support award. Wendy replies that the evidence was sufficient to support the court's award.

*CONCLUSION*—The trial court did not abuse its discretion.

It has long been established that modification of a child support order is within the sound discretion of the trial court, and such determination will not be disturbed on appeal unless there is no substantial evidence to support the finding of the trial court. *Lepper v. Lepper* (1987), Ind., 509 N.E.2d 818; *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157. We will not reweigh the evidence or judge the credibility of witnesses. *Meehan, supra.*

At the time Wendy petitioned for modification, Indiana law provided that a child support order was subject to modification if a party demonstrated changed circumstances so substantial and continuing that the terms of the original order were rendered unreasonable. Ind.Code 31–1–11.-5–17(a) (1988).[1] When determining whether or not a change in circumstances has occurred, the trial court is to consider the totality of the circumstances. *Blickenstaff v. Blickenstaff* (1989), Ind.App., 539 N.E.2d 41; *Halum v. Halum* (1986), Ind.App., 492 N.E.2d 30, *trans. denied.*

Wendy testified that the costs of raising the children had increased drastically since the initial support order was entered. *Record* at 152. There also was evidence that Rolland's income increased significantly during the 1980s, rising from over $96,000 in 1984 to $219,000 in 1988. *Record* at 161–62, 186–87, 202–3, 298, 301, 308. As this court observed in *Blickenstaff, supra,* factors such as the rate of inflation and the fact that it takes more to support a child as the child grows older can be considered by the trial court in determining whether a substantial change in circumstances has occurred. We cannot conclude that the trial court's determination that a substantial change in circumstances had occurred was illogical or unreasonable in light of the evidence presented. *McCallister v. McCallister* (1986), Ind. App., 488 N.E.2d 1147; *Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321.

Rolland next complains that the trial court abused its discretion when it ordered him to pay $1,043.90 per month as child support. Once a trial court determines there has been a substantial change in circumstances justifying a modification of the order, the amount of the award is within the sound discretion of the trial court. *In re Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315; *Howard v. Reeck* (1982), Ind.App., 439 N.E.2d 727.

The record indicates that the trial court used the Indiana Child Support Guidelines to determine the amount of Rolland's child support obligation. *Record* at 50. The supreme court has adopted the Guidelines as a rebuttable presumption of the correct amount of child support to be awarded. Ind.Rules of Procedure, Child Support Rule 2. While the Support Rules were not effective until October 1, 1989, and therefore not dispositive of this issue, we observe that our supreme court has determined that in modifying a support order the trial court may consider all of the factors relevant to the initial determination of child support found in IC 31–1–11.5–12(a). *Lepper, supra.* The Guidelines were explicitly designed to be consistent with this statutory provision. Ind. Rules of Procedure, Child Support Guideline 1. So, we conclude that the trial court did not abuse its discretion when it used the Guidelines to determine Rolland's support obligations.

Lastly, Rolland complains that the trial court should not have included the payment of his eldest daughter's educational expenses in the child support order. Rolland claims that no evidence was introduced demonstrating his daughter's aptitude and ability for higher education, citing *Giselbach v. Giselbach* (1985), Ind.App., 481 N.E.2d 131.

IC 31–1–11.5–12(b) provides that the trial court may award, as child support, sums for a child's education, taking into account the child's aptitude and ability, and the ability of the parent or parents to meet the educational expenses. In *Giselbach, supra,* this court concluded that there must be some evidence of a child's aptitude and ability before an award of educational expenses may be given.

An examination of the record, however, demonstrates that appreciable evidence of Rolland's daughter's aptitude and ability was presented to the trial court. The evidence demonstrates that the eldest daughter had applied to, been accepted by and enrolled at the University of Kansas. *Record* at 153. We think this is sufficient evidence of the daughter's aptitude and ability.

---

1. IC 31–1–11.5–17 was amended by 1990 Ind. Acts Pub.L. No. 155–1990, which allows modification of a child support order if it differs by more than twenty percent from the amount that would be awarded pursuant to the Indiana Child Support Guidelines.

*ISSUE TWO*—Did the trial court err when it determined Rolland was in contempt of court?

*PARTIES' CONTENTIONS*—Rolland says the evidence was insufficient to establish that his failure to pay his child support obligation was willful, and therefore the evidence was insufficient to establish he was in contempt of court. Wendy responds that the evidence demonstrates Rolland failed to pay a substantial amount of his child support obligation and further that he had more than sufficient income to meet his obligations.

*CONCLUSION*—The trial court properly adjudged Rolland to be in contempt of court.

Evidence was introduced at trial indicating that between 1976 and 1989, Rolland failed to pay $8,550 for child support through the Clerk of the Tippecanoe Circuit and Superior Courts. *Record* at 146. Wendy executed an affidavit in August of 1979 which indicated that, due to nonconforming payments made by Rolland, the delinquency up to that date was only $765. Delinquencies following that date totaled $5,310. After crediting Rolland with $1,190 for nonconforming payments, Wendy requested $4,120 as Rolland's total delinquency. *Record* at 48.

■ A trial court may adjudge a noncustodial parent to be in contempt of court for failing to pay child support. *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279. Like the appellant in *Holman,* Rolland simply asserts that the evidence does not demonstrate his nonpayment was willful because he believed his nonconforming payments satisfied his child support obligation.

■ It was for the trial court to weigh the evidence and determine whether or not Rolland's noncompliance with the court's order was willful. Rolland had the burden of proving to the court that his failure to comply was not willful, and Rolland appeals the trial court's negative judgment which we will reverse only if there is no evidence to support the court's conclusion. *Holman, supra.*

Rolland makes much of the fact Wendy executed an affidavit in 1979 which indicated his child support delinquency was less than indicated by the Clerk's records. That affidavit, however, does not demonstrate that Rolland also believed his delinquencies during the 1980s were excused. While there is some evidence of nonconforming payments in the record, for which Rolland is not entitled to credit, *see Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, the disparity between the actual amount owed and actual amount paid is such that the trial court could reasonably conclude that, given Rolland's substantial income in the 1980s, his failure to pay his child support obligation was willful. It is the exclusive function of the trial court to weigh the evidence, which it did.

*ISSUE THREE*—Does the statute allowing the trial court to award educational expenses violate Rolland's due process and equal protection rights?

*PARTIES' CONTENTIONS*—Rolland attacks the statute authorizing the payment of educational expenses as violative of his due process and equal protection rights because the statute is unconstitutionally vague and treats divorced parents differently from married parents. Wendy first responds that Rolland has waived his equal protection claim. She further argues that the statute contains sufficient guidelines for the trial court and that divorced parents may be treated differently than married parents because they are not similarly situated.

*CONCLUSION*—The statute is constitutional.

Wendy first seeks to plow under Rolland's equal protection argument by claiming he has waived it for failing to include it in his motion to correct errors. While Rolland's motion to correct errors referred only to his due process claim, his trial brief and the memorandum accompanying his motion to correct errors addressed his equal protection claim as well. *Record* at 44–46, 64–74. In *Lugar v. State ex rel. Lee* (1978), 270 Ind. 45, 383 N.E.2d 287, the supreme court determined that arguments which were presented to the trial court in

legal briefs or memorandum, but not specifically stated in the motion to correct error, may be addressed on appellate review. There is no waiver.

### I. DUE PROCESS

It is Rolland's position that the statute authorizing the payment of educational expenses as child support, IC 31–1–11.5–12(b) [hereinafter referred to as the statute], is unconstitutionally vague and therefore violates his due process rights. The statute provides, in pertinent part:

"The child support order may also include, where appropriate:

(1) sums for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses...."

■■■ Legislation under constitutional attack is clothed with a presumption of constitutionality. *Miller v. State* (1987), Ind., 517 N.E.2d 64; *Bozarth v. State* (1988), Ind.App., 520 N.E.2d 460, *trans. denied.* A statute will not be found unconstitutionally vague when the language is sufficiently definite to inform a person of ordinary intelligence of a conduct which is prohibited. *Payne v. State* (1985), Ind., 484 N.E.2d 16; *Bozarth, supra.* Meticulous exactitude and absolute precision are not required in drafting statutes. *Illinois Steel Co. v. Fuller* (1939), 216 Ind. 180, 23 N.E.2d 259, *Bozarth, supra.* The specificity that due process requires may be ascertained by reference to the entire text of the statute, to well-settled common law meanings, to prior judicial decisions, to similar statutes, or to common generally accepted usage. *Bozarth, supra.* If a statute can be made constitutionally definite by reasonable construction, the court's duty is to give the statute that construction. *Id.*

■■■ The statute we consider is not adrift in a legislative sea of uncertainty. Rolland sees the statute as vague because parents do not know exactly what expenses they will be ordered to pay before the trial court exercises its discretion. However, a statute is not unconstitutionally vague if the provisions under scrutiny extend fair notice of their import *to those to whom the statute is directed.* *State v. Elliott* (1976), 171 Ind.App. 389, 357 N.E.2d 276.

■■■ By its terms, the statute is directed toward trial courts, not parents, and therefore under the statute Rolland is required to do nothing. Simply because Rolland does not know how a trial court will exercise its discretion does not mean the statute is unconstitutionally vague. Our focus is whether the statute provides sufficient guidelines for *a trial court* to exercise its discretion in accordance thereto.

This statute is a link in the entire child support statutory scheme. It directs the trial court to consider the child's aptitude and ability as well as the ability of the parent to meet the educational expenses before ordering the payment of such expenses as child support. We fail to see any lack of clarity or ambiguity in this statute simply because it fails to specify the exact expenses that may be inherent in a given situation. No Indiana court has considered this exact point, but an Illinois case has interpreted its dissolution laws concerning the distribution of property as not unconstitutionally vague for failing to define "just proportions" and "all relevant factors." *In re Marriage of Thompson* (1979), 79 Ill. App.3d 310, 34 Ill.Dec. 342, 398 N.E.2d 17.

Only statutes that employ terms which are so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application, violate due process. *Baggett v. Bullitt,* (1964) 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377. It is sufficient if the statute is set out in such terms that the ordinary person exercising ordinary common sense can sufficiently comply with the statute. *Arnett v. Kennedy,* (1974) 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15.

No guesswork is necessary to discern the meaning of IC 35–1–11.5–12(b). Parents seeking to dissolve their marriages are aware that the trial court may, in its discretion, order them to pay for their children's education. The trial court has been given sufficient guidance in exercising its discretion, and a parent always has the option of seeking judicial clarification of a particular

trial court order if the parent believes the order is too vague to follow.

## II. EQUAL PROTECTION

Rolland finds the statute infirm because it violates his equal protection rights. His theory is, that as a divorced parent he can be ordered to pay for his child's education, while a married parent may unilaterally refuse to do so. The supreme courts of both Illinois and Washington have considered this question, *Kujawinski v. Kujawinski* (1978), 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382; *Childers v. Childers* (1978), 89 Wash.2d 592, 575 P.2d 201. These decisions illuminate our pathway to decision. Our courts have not spoken on this subject.

 Under traditional equal protection principles, distinctions between classes need only be drawn in such a manner as to bear some rational relationship to a legitimate state objective. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the state's goals and only if no grounds can be conceived to justify them. *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815.

 Like the courts in *Kujawinski, supra,* and *Childers, supra,* we conclude that a rational relationship exists between the statute and the compelling state interest in seeing that children are properly provided for within the boundaries of the needs of the children and what parents can afford.[2]

The court in *Childers* observed that the statute allowed the trial court to secure for the children what they would have received from their parents except for the divorce, and that nothing more was expected of divorced parents than married parents:

> "Untold sacrifices are made by parents who remain steadfast to their marital obligations in order to educate their children. The same responsibility rests on parents who seek and obtain a divorce. Parents who remain steadfast to their marital vows are frequently compelled by thrift, perseverance and economy to accumulate savings while their earning capacity is good, so as to be able to adequately educate their children when the time or occasion arrives."

*Childers, supra,* 89 Wash.2d at 603, 575 P.2d at 208, quoting *Underwood v. Underwood* (1931), 162 Wash. 204 at 210, 298 P. 318 at 320.

The court also said: "Parents, when deprived of the custody of their children, very often refuse to do for such children what natural instincts would ordinarily prompt them to do." *Childers, supra,* 89 Wash.2d at 603, 575 P.2d at 208, quoting *Esteb v. Esteb* (1926), 138 Wash. 174, 184, 244 P. 264, 267.

The Illinois supreme court put it this way:

> "In a normal household, parents ... direct their children as to when and how they should work or study. That is on the assumption of a normal family relationship, where parental love and moral obligation dictate what is best for the children. Under such circumstances, natural pride in the attainments of a child ... would demand of parents provision for a college education, even at a sacrifice.
>
> When we turn to divorced parents—a disrupted family—society cannot count on normal protection for the child, and it is here that equity takes control to mitigate the hardship that may befall children of divorced parents."

*Kujawinski, supra,* 71 Ill.2d at 579–80, 17 Ill.Dec. at 809, 376 N.E.2d at 1390, quoting *Maitzen v. Maitzen* (1959), 24 Ill.App.2d 32 at 38, 163 N.E.2d 840 at 843.

The law in Indiana follows this line of reasoning. IC 31–1–11.5–12(a)(2) provides that the trial court, when determining a child support award, is to consider the standard of living the child would have enjoyed had the marriage not been dissolved. In allowing the trial court to order a parent to provide educational expenses, the legisla-

---

**2.** We do not utilize a strict scrutiny test in examining the legislative classification because strict scrutiny is necessary only when a suspect class or a fundamental right is involved. *In re*

*Marriage of Murray* (1984), Ind.App., 460 N.E.2d 1023. As the court in *Childers, supra,* observed the classification is not suspect, and there is no fundamental right not to support one's children.

ture has simply allowed the court to seek to insure that children of the marriage would have the same standard of living had the marriage not been dissolved.

Rolland's arguments that he should be allowed some input into his daughter's educational decisions, and not be treated simply as a checkbook, have not been ignored. It is within the trial court's discretion to tailor a child support award to the circumstances before it. Providing the noncustodial parent a role in a child's educational decisions is a matter for the sound discretion of the trial court, and it is at the trial level Rolland should direct his desire to be included in educational decisions. The statute gives the trial court ample discretion to fashion child support orders which include input from the noncustodial parent. The trial court must also guard against the possible use of educational expenses as a weapon wielded by disgruntled parents. The trial court is in the unenviable position of having to protect the child from possible abuses by parents.

In any event, Rolland has failed to demonstrate the trial court abused its discretion in ordering him to pay his oldest daughter's educational expenses. There is some evidence in the record that Rolland's daughter contacted him to inform him of her educational choices and requested his aid. *Record* at 374–77.

It follows that in our opinion the statute does not violate Rolland's equal protection rights—there is a rational relationship between the child support statutory scheme and the state interest in seeing that children of divorced parents are afforded the same opportunities as children of married parents.

Judgment affirmed.

SHIELDS, P.J., concurs.

SULLIVAN, J., concurs in part and concurs in result in part with opinion.

SULLIVAN, Judge, concurring in part and concurring in result in part.

I concur in result as to Issue One. I concur as to Issue Two. I concur in result as to Issue Three, Parts I and II.

## ISSUE ONE

As to Issue One, Rolland concedes that his income dramatically increased during the thirteen year interim. He points out, however, that at the time of the hearing he was unemployed and had been so for approximately seven months. He argues that this fact renders the $1,000–plus monthly support order erroneous as a matter of law. In view of Rolland's past income performance, the trial court was entitled to consider his present circumstance as a momentary aberration. In this respect I do not believe the trial court committed error.

While the record reflects that Wendy requested the trial court to utilize the as yet unadopted Guidelines and while her proposed support calculation using the Guidelines is the exact amount ordered by the court, the decree does not recite what considerations resulted in the amount. If the record were devoid of evidence other than the Guidelines themselves, I would vote to remand for a redetermination of the support order in light of the statutory factors then in effect. *Stierwalt v. Dyer* (1988) 1st Dist. Ind.App., 531 N.E.2d 1213. As the majority notes, however, the Guidelines are consistent with the statutory considerations. Because the evidence supports the discretion exercised by the trial court in fixing the modified support amount, reversible error has not been demonstrated.

The majority holds that "application to and acceptance by" the University of Kansas demonstrates that the child has the aptitude and ability for higher education. I have reservations about the precedential impact of this holding but join in it.

In *Giselbach v. Giselbach* (1985) 2nd Dist.Ind.App., 481 N.E.2d 131, the child not only had applied, been admitted and enrolled, but had completed at least one semester. We nevertheless reversed a modification order which directed the father to pay the college expenses. We noted that the trial court had not "conducted the appropriate inquiry into the child's aptitude for the requested education or into the parents' ability to finance such education". 481 N.E.2d at 134. However, in *Taylor v. Chaffin* (1990) 2nd Dist. Ind.App., 558

N.E.2d 879, we upheld a college expense order despite the fact that the child's high school record was poor and during her two years of college she had achieved only a 1.89 grade point average. The trial court in that case conditioned the order upon her ability to maintain the 2.0 GPA required for graduation.

In the case before us, the evidence is adequate to show that Rolland is financially able to undertake the expense. There is no evidence, however, with regard to the child's academic skills, aptitude and interest, other than the mere application and acceptance.

I have very little doubt that there is some evidence available which would reflect that the child has at least minimal aptitude and would benefit from higher education. The record, however, is silent in that respect. We, at the appellate level, may not by speculation, no matter how well founded in our instincts and collective knowledge, provide facts to fill evidentiary gaps. If the mandatory considerations for ordering a noncustodial parent to pay for higher education are to be changed, that is the prerogative of the legislature. Nevertheless, in the light of *Taylor v. Chaffin, supra,* I join majority in drawing the requisite inference of aptitude and ability from the meager evidence at hand. The facts before us are at least free of the negative connotations concerning aptitude and ability which we discounted in *Taylor*.

Subject to the above comments, I concur in affirmance of the monthly support award and the order for payment of college expenses.

### ISSUE TWO

I fully concur in the affirmance of the trial court's adjudication of contempt.

### ISSUE THREE

### I. DUE PROCESS

I agree that I.C. 31–1–11.5–12(b) does not violate due process rights. As held by the majority, there is no lack of clarity or ambiguity in the statute merely because it does not precisely state in what manner or form the court will exercise its discretion or because it does not set forth the exact expenses that may inhere in a given circumstance.

However, I disagree that our sole focus may be directed toward whether the statute contains sufficient guidelines for the trial court. It is not fair to say that the statute is directed only to the trial court. It is also directed to those persons who may feel its impact, i.e., to the child whose educational future is in the balance and to the parent who may be required to bear the financial burden for that education. The statute must be sufficiently clear as to permit the petitioner to carry his or her burden of proving educational need, ability and aptitude, as well as the financial ability of respondent to meet those needs. It also must advise respondent with some degree of clarity the parameters of the matter to be determined, in order that the right to be heard is not a hollow right. Respondent must be able to fairly prepare a defense to the claim of petitioner. *Podgor v. Indiana University* (1978) 2nd Dist. Ind.App., 381 N.E.2d 1274. The nature of the inquiry here was clearly apparent to respondent and he was fully apprised of the issues to be considered and had ample opportunity to be heard. He has throughout the proceedings vigorously defended against the claim. The standards applicable to the proceeding as set forth in the statute conformed to the requirements of due process.

The principle thrust of Rolland's due process argument is not that the statute is too vague to afford adequate notice and opportunity to be heard. Rather, he emphasizes the assertion that the statute unconstitutionally infringes upon his right to direct the education and upbringing of his child. Although this aspect of Rolland's appeal is not discussed in the majority opinion, I believe it to be without merit.

As a general proposition, parents have a liberty right in the upbringing and education of their children. *Wisconsin v. Yoder* (1972) 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15; *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary* (1925) 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed.

1070. The right, however, is not absolute. It is tied to the right of control. *See Wisconsin v. Yoder, supra,* 92 S.Ct. at 1541. It is inextricably intertwined with the actual or legal custody of the child and the responsibility for the "daily supervision, education, protection, or care of the child." *Quilloin v. Walcott* (1978) 434 U.S. 246, 98 S.Ct. 549, 555, 54 L.Ed.2d 511. This is not to say that a parent after divorce loses all due process rights to maintain the parental relationship. *See Stewart v. Stewart* (1988) 4th Dist., 521 N.E.2d 956 (right of visitation).

Nevertheless, when in a dissolution matter, an order vests physical and legal custody in one parent as opposed to the other, the right to make educational decisions follows the custody. The exercise of such right, so long as in the best interests of the child, does not impinge upon the non-custodial parent's rights. Nor is it a violation of the non-custodial parent's liberty rights to order him or her to bear the reasonable cost, or a portion thereof, of that education. *See* 36 ALR 3d 1093, *Noncustodial Parent's Rights as Respects Education of Child.*

## II. EQUAL PROTECTION

The decision of the majority, with respect to the equal protection argument, presupposes that the parents of an intact family will always provide a college education for their child or may be compelled to do so.

Without question a clearly rational and unmistakable connection exists between affording a college education to a deserving child and requiring a non-custodial parent to assume a financial obligation for that education. This determination, however, does not address the disparate treatment which inheres in the placement of married parents in a classification separate from that of divorced parents.

Perhaps the answer lies in that, even assuming the duty of parents in an intact family to provide a college education,[1] there is no vehicle or forum in which to enforce that duty. A parent who knowingly deprives a dependent child of support may be criminally prosecuted. I.C. 35-46-1-4 & 5. The civil authorities may by proper petition and court order remove a child under the age of eighteen from the home environment if that child is being deprived of necessary support. I.C. 31-6-4-3 et seq. Neither of these remedies would appear appropriate for a refusal of a parent to send a child to college.

Perhaps the answer lies in the corollary proposition that a parent is immune from civil suit brought against him by his minor child. *See Davidson v. Davidson* (1990) 1st Dist. Ind.App., 558 N.E.2d 849; *Vaughan v. Vaughan* (1974) 1st Dist., 161 Ind.App. 497, 316 N.E.2d 455 (negligence action); 17 Ind.L.Rev., Domestic Relations, 173 at 189–190; *but see Buffalo v. Buffalo* (1982) 4th Dist., Ind.App., 441 N.E.2d 711 (immunity does not exist as to non-custodial parent).

In any event, even assuming that higher education be considered a necessity, it would appear that any disparity in treatment exists not by reason of the classification but rather because the law has not created a means for enforcement as against a custodial parent. This arguable gap in the law does not give rise to a cognizable claim of unequal protection.

Legislation is not violative of the constitution merely becuase

"it is not all-embracing and does not include all the evils within its reach.

\*　　\*　　\*　　\*　　\*　　\*

[M]ere underinclusiveness is not fatal to the validity of a law under the equal protection clause, even if the law disadvantages an individual or identifiable members of a group." 16A Am.Jur.2d, Constitutional Law § 759 at 855 & 857.

---

**1.** *But see Giselbach v. Giselbach* (1985), *supra,* 481 N.E.2d 131 which acknowledged that a court might properly include the cost of education as an element of support, but observed that "there may be·no absolute legal duty to provide a college education for a minor child."

481 N.E.2d at 133. This quote is founded upon *Haag v. Haag* (1959) 240 Ind. 291, 163 N.E.2d 243 which held that the courts are "without authority to enforce moral obligations, no matter how manifestly evident they may be." 240 Ind. at 305, 163 N.E.2d 243.

Neither does equal protection "require any particular kind of remedy or identical remedies." *State ex rel. McCormick v. Superior Court of Knox County* (1951) 229 Ind. 118, 125, 95 N.E.2d 829.

If the statute under inquiry must be deemed of uniform application in order to afford constitutionality that interpretation is possible. *S.M.V. v. Littlepage* (1982) 1st Dist. Ind.App., 443 N.E.2d 103. We need only acknowledge that a custodial parent, under similar circumstances as to financial ability and as to the child's aptitude, may be made to provide higher education. We need not, however, and we cannot in this case, create a cognizable theory and a judicial procedure whereby that child may obtain a higher education. That task, if necessary to the constitutional scheme, will and must await another time and another forum.

Suffice it to say that notwithstanding the arguable appearance of discrimination in the statute, I agree that it does not run afoul of the equal protection clause.

I vote to affirm the judgment.