**In re the Marriage of Kirk Allen REEVES, Appellant–Petitioner Below,**

v.

**Rita Sue REEVES, Appellee–Respondent Below.**

No. 49A02–9011–CV–677 [1].

Court of Appeals of Indiana, Third District.

Jan. 21, 1992.

---

1. This case was assigned to this office on July 3, 1991.

Thomas R. Barnes, Indianapolis, for appellant-petitioner.

Ken A. Elmendorf, Elmendorf, Meyer, Freese & Walker, Brownsburg, for appellee-respondent.

STATON, Judge.

Kirk Reeves appeals the modification of his child support obligation. He presents five issues for our review:

I. Whether IND.CODE 31–1–11.5–12(b)(1) is unconstitutional?

II. Whether the trial court erred by ordering Kirk to pay one-half of his daughter's college expenses, including room and board?

III. Whether the trial court erroneously modified Kirk's child support obligation retroactively?

IV. Whether the trial court erroneously ordered a substantial modification of the amount of child support payable by Kirk?

V. Whether the trial court erroneously ordered Kirk to pay a portion of Rita's attorney fees?

We affirm the trial court's order modifying Kirk's child support obligation, but remand to the trial court for a determination concerning appropriate abatement of child support payments to Rita during the period of time that Nicole is residing on campus.

The marriage of Kirk Allen Reeves and Rita Sue Reeves was dissolved on September 2, 1975. Rita was awarded custody of the couple's daughter Nicole, and Kirk was ordered to make child support payments in the sum of $25.00 per week or an amount equal to the U.S. Navy dependent allowance. On September 8, 1989, Rita filed a Petition to Modify Decree of Dissolution of Marriage, requesting an increased amount of child support and an order for the payment of college expenses.

At an August 23, 1990 hearing, evidence was adduced concerning Nicole's scholastic ability and educational aspirations. Nicole was ranked in the top 10% of her high school senior class and planned to attend Purdue University. Nicole worked part-time at a restaurant, earning $3.55 per hour.

Rita and Kirk each testified concerning their respective incomes and assets. Rita, a registered nurse, earns $17.19 per hour; Kirk, an engineer, earns $17.30 per hour.

Rita testified that she owns a house valued at approximately $59,000.00.[2] At the time of hearing, the mortgage balance was approximately $2,000.00. Rita also disclosed the following assets: a $5,000.00 college fund, a 1989 automobile, a 1984 automobile, a checking account containing $300.00 to $800.00, a $1,500.00 credit union account and a small savings account.[3]

Kirk testified that, five years earlier, he and his wife purchased a house for $76,-700.00. He estimated that the value of the house on the date of the hearing was approximately $80,000.00 to $84,000.00. Kirk's financial declaration disclosed the following assets: a 1986 automobile, a 1988 automobile, a checking account in the amount of $5,534.34 and an IRA account in the amount of $6,714.88.

---

2. A real estate appraisal introduced into evidence indicated that the fair market value of the home was approximately $65,000.00. Record, p. 123.

3. At the subsequent hearing on attorney fees, Rita testified to the existence of a vested retirement account. The impromptu calculation of Kirk's counsel resulted in valuation at approximately $22,000.00.

At the conclusion of the presentation of evidence, the trial court issued the following order:

"The Court finds and orders as follows: 1) That child support shall be increased to $104.00 per week retroactive to 3–16–90 and shall be paid through the Clerk. 2) That each party shall be responsible for ½ of the college expenses (tuition, Board, books, and fees) of a State college less any grants or scholarships which the minor child may receive. 3) Each party to pay their own attorney fees."

Record, p. 40.

On August 27, 1990, Kirk filed a praecipe and notified opposing counsel of his intention to appeal the trial court's order. On September 7, 1990, Rita filed a Petition for Award of Appellate Attorney Fees. Rita's petition alleged that she was without funds to pay appellate attorney fees and that the appeal initiated by Kirk was frivolous. She requested fees in the amount of $3,000.00.

At the conclusion of a hearing held on November 1, 1990, the trial court ordered Kirk to pay $1,500.00 to Rita's appellate counsel.

I.

*Constitutionality of I.C. 31–1–11.5–12(b)(1)*

I.C. 31–1–11.5–12 provides in pertinent part:

(b) The child support order may also include, where appropriate:

(1) Sums for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses;

■ Kirk argues that the foregoing statute unconstitutionally interferes with his fundamental right to direct the education and upbringing of his child. He also contends that the statute is violative of equal protection rights, in that divorced parents may be compelled to pay for a child's college education although married parents may refuse to do so.

The constitutionality of I.C. 31–1–11.5–12(b)(1) was recently challenged in *Neudecker v. Neudecker* (1991), Ind.App., 566 N.E.2d 557. Appellant Neudecker contended that his due process and equal protection rights were violated. The *Neudecker* court found no violation of equal protection rights:

"Under traditional equal protection principles, distinctions between classes need only be drawn in such a manner as to bear some rational relationship to a legitimate state objective.... [W]e conclude that a rational relationship exists between the statute and the compelling state interest in seeing that children are properly provided for within the boundaries of the needs of the children and what parents can afford."

*Id.* at 563.

The due process argument considered in *Neudecker* primarily focused upon Neudecker's contention that I.C. 31–1–11.5–12 is unconstitutionally vague. However, the *Neudecker* court briefly addressed the appellant's claim that he was denied a role in directing his child's upbringing and education:

"It is within the trial court's discretion to tailor a child support award to the circumstances before it. Providing the noncustodial parent a role in a child's educational decisions is a matter for the sound discretion of the trial court, and it is at the trial level Rolland should direct his desire to be included in educational decisions. The statute gives the trial court ample discretion to fashion child support orders which include input from the noncustodial parent."

*Id.* at 564.

We also find persuasive the concurring opinion filed in *Neudecker*. Judge Sullivan specifically addressed the issue of infringement upon the right of a parent to direct his child's upbringing and education, which is the primary issue advanced by Kirk in his constitutional challenge:

"As a general proposition, parents have a liberty right in the upbringing and education of their children. *Wisconsin v. Yoder* (1972) 406 U.S. 205, 92 S.Ct. 1526,

32 L.Ed.2d 15; *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary* (1925) 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070. The right, however, is not absolute. It is tied to the right of control. *See Wisconsin v. Yoder, supra,* 92 S.Ct. at 1541. It is inextricably intertwined with the actual or legal custody of the child and the responsibility for the 'daily supervision, education, protection, or care of the child.' *Quilloin v. Walcott* (1978) 434 U.S. 246, 98 S.Ct. 549, 555, 54 L.Ed.2d 511. This is not to say that a parent after divorce loses all due process rights to maintain the parental relationship. *See Stewart v. Stewart* (1988) 4th Dist., 521 N.E.2d 956 (right of visitation). Nevertheless, when in a dissolution matter, an order vests physical and legal custody in one parent as opposed to the other, the right to make educational decisions follows the custody. The exercise of such right, so long as in the best interests of the child, does not impinge upon the non-custodial parent's rights. Nor is it a violation of the non-custodial parent's liberty rights to order him or her to bear the reasonable costs, or a portion thereof, of that education."

*Id.* at 565–6.[4]

I.C. 31–1–11.5–12(b) does not violate either the due process or equal protection rights of a divorced or non-custodial parent by providing that a trial court may order, under appropriate circumstances, the payment of a child's educational expenses.

## II.

### Educational Needs Order

■ Kirk argues that the trial court's order providing that he pay one-half of Nicole's college expenses, including board, coupled with the revised child support order, duplicates provision for Nicole's living expenses and results in a "windfall" to the custodial parent.

Ind. Child Support Guideline 3(E)(3) provides:

"Any extraordinary education expense incurred on behalf of the children may be added to the basic child support obligation. Extraordinary expenses are any reasonable and necessary expenses for attending private or special schools, for attending any institution of higher education, or necessary to meet particular educational needs of a child. In considering extraordinary educational expenses, the Court should consider all sources of income and education assistance available to the children and parents. These should include, but are not limited to, scholarships, grants, student loans and summer and school year employment. (See line 4C of worksheet)

Alternatively, those expenses may be ordered separately and distinctly from child support."

The commentary accompanying the foregoing guideline provides in pertinent part:

"If educational expense is included in the child support order it should be remembered that some living expense is already included, but not for a household separate from the custodial parent. If it is set in a separate order, *support paid to the custodial parent should be reduced or eliminated, at least while the student is away from the household and at school.*"

(Emphasis added.)

Rita testified that Nicole planned to attend Purdue University and that her anticipated expenses would include $1,916.00 for tuition and $2,950.00 for "board." The trial court specifically included "board" expense within the order for payment of Nicole's educational expenses. However, the trial court's order did not address the issue of full or partial abatement of Kirk's basic child support obligation during Nicole's on-campus residence.

Child Supp., G.3 specifically contemplates the avoidance of duplicative orders regarding a college student's living expenses. We therefore remand this matter to the

---

**4.** Subsequently, our supreme court approved and adopted the analysis of Neudecker's equal protection and due process claims found in the majority and concurring opinions of *Neudecker, supra. Neudecker v. Neudecker* (1991), Ind., 577 N.E.2d 960, 961–62.

trial court for a determination, consistent with the Indiana Child Support Guidelines, of whether payments from Kirk to Rita should be reduced or eliminated during Nicole's on-campus residence.

### III.

### *Retroactive Modification*

Kirk next claims that the trial court erred in making the order for increased child support retroactive to March 16, 1990.

■■■ Retroactive modification of support is erroneous only if the modification purports to relate back to a date earlier than that of the petition to modify. A trial court may make a modification of support payments effective as of any date after the filing of a modification petition. *Smith v. Mobley* (1990), Ind.App., 561 N.E.2d 504, 508, *trans. denied.*

■■ Rita's Petition to Modify Decree of Dissolution of Marriage was filed on September 8, 1989. The trial court, in the exercise of sound discretion, chose to modify Kirk's support obligation effective March 16, 1990, a date on which Kirk requested a continuance. The trial court committed no error in selecting an effective modification date six months subsequent to the filing of a modification petition.

### IV.

### *Substantial Increase in Child Support Award*

Kirk contends that the trial court erroneously ordered an increase of approximately 300% in his basic child support obligation.[5]

In compliance with the Indiana Child Support Guidelines, Kirk and Rita compiled child support obligation worksheets, disclosing their respective incomes under penalties for perjury. Petitioner's Exhibit 5, a child support worksheet containing computations of each parent's basic child support obligation, disclosed that Kirk's obligation amounted to $105.70 weekly. Record, p. 83.

■■ Child support awards determined by application of the Indiana Child Support Guidelines are presumptively correct, although the presumption is rebuttable. The guidelines are consistent with I.C. 31–1–11.5–12, which places a duty on either or both parents to support their child(ren), based on the resources of the custodial parent, standard of living had the marriage not dissolved, physical or mental condition of the child(ren), and the financial resources and needs of the non-custodial parent. The guidelines presume a division of the child support obligation in proportion to each parent's available income. An obligor who seeks a deviation from the guideline amount must present evidence such that the trial court can conclude that an order for the guideline amount would be unjust or inappropriate under existing circumstances. *Gielsdorf–Aliah v. Aliah* (1990), Ind.App., 560 N.E.2d 1275, 1277–78.

The guidelines provide that, in appropriate circumstances, a substantial increase in an obligor's child support payment may be "phased in:"

> "If the amount of support computed under the Guidelines is significantly higher than that paid under the prior order *and would require a drastic reduction in the obligor's standard of living,* consideration should be given to phasing in the additional support. This approach would allow the obligor time to make adjustments in his or her standard of living."

Child Supp., G. 4 comment (emphasis added).

■■ In the instant case, Kirk presented no evidence that the increase in his child support obligation, although substantial, would drastically reduce his standard of living. Nor did he present evidence from which the court could conclude that the guideline-based support award was unjust or inappropriate. The trial court did not err in ordering Kirk to pay child support in the amount of $104.00 weekly.

---

**5.** In 1980, Kirk's child support obligation had been increased to $151.00 monthly, commensurate with a revised military dependent allowance.

### V.

#### *Appellate Attorney Fees*

Kirk contends that the trial court erroneously ordered that he pay one-half of Rita's appellate attorney fees.

 A trial court has broad discretion in assessing attorney fees in marriage dissolution actions. When an award of attorney fees is requested, the court must consider the resources of the parties, their economic condition, and the ability of the parties to engage in gainful employment and earn adequate income. *Barnes v. Barnes* (1990), Ind.App., 549 N.E.2d 61, 66, *reh. denied.*

Evidence adduced at the attorney fees hearing indicated that Kirk and Rita each earn an adequate income and possess certain assets. Rita has substantial equity in her residence. Kirk asserts that he has relatively little equity in his residence; however, the exact amount of Kirk's equity is not indicated in the record.

Rita's most substantial liquid asset consists of a $5,000.00 savings account which has been set aside for Nicole's education. Rita indicated that this account would be substantially depleted if she were required to defend an appeal of the trial court's support modification order.

Assuming that Rita does, in fact, possess greater assets than does Kirk, we cannot conclude that the trial court abused its discretion in awarding Rita a portion of her appellate attorney fees, thereby preserving a proportional amount of Nicole's college fund.

The order of the trial court is affirmed. We remand for a determination as to abatement of the basic child support obligation during Nicole's on-campus residence.

CONOVER and SULLIVAN, JJ., concur.