William H. **LUEDER**, Appellant–Plaintiff,

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY,** Appellee–Defendant.

No. 56A05–9505–CV–163.

Court of Appeals of Indiana.

Aug. 14, 1997.

Rehearing Denied Nov. 4, 1997.

---

Peter L. Obremskey, Kent M. Frandsen, Anthony W. Patterson, Parr Richey Obremskey & Morton, Lebanon, Daniel C. Blaney, Blaney, Casey & Walton, Morocco, for Appellant–Plaintiff.

Paul A. Rake, Robert J. Feldt, Sherry L. Clarke, Eichhorn & Eichhorn, Hammond, John W. Barce, Barce & Ryan, Kentland, for Appellee–Defendant.

## OPINION

BARTEAU, Judge.

William H. Lueder appeals the judgment rendered in favor of the defendant, Northern Indiana Public Service Company (NIPSCO), in Lueder's personal injury action. Lueder raises the following restated issues:

1. Whether the trial court's evidentiary rulings, jury instructions and verdict form improperly focused the jury's attention on the conduct of individuals who were not nonparties under the Comparative Fault Act?

2. Whether the trial court erred in instructing the jury that violations of the Occupational Safety and Health Act standards were negligence per se?

3. Whether the instructions as a whole were so inconsistent, disorganized and argumentative that Lueder did not receive a fair trial?

4. Whether the trial court erred in admitting evidence of standards contained in the 1984 edition of the National Electrical Safety Code?

5. Whether the trial court erred in refusing to instruct the jury that the 1961 edition of the National Electrical Safety Code applied to the case?

### FACTS

On July 16, 1985, Lueder was working as a construction worker for International Bridge Company, Incorporated. Lueder and the crew with which he was working were placing concrete traffic barriers along the Indiana Toll Road. The crew used a crane to remove the concrete barriers from a truck and place them in the roadway. Lueder and another worker secured the barriers into place once they were in the roadway, and then guided the lifting beam of the crane back towards the truck so that it would not swing into the lane of moving traffic. During the course of the work, the boom of the crane came in contact with an overhead electrical line and, as a result, Lueder was severely shocked.

Lueder subsequently filed this action against NIPSCO alleging that the electrical line was too low, thereby causing the contact that led to his injury. The jury returned a verdict in favor of NIPSCO, finding that NIPSCO's conduct was not a proximate cause of Lueder's injury. The trial court entered judgment in accordance with the jury verdict, and Lueder now appeals that judgment.

### FOCUS ON UNNAMED NONPARTIES

██ Lueder argues that the trial court, through its evidentiary rulings,[1] instructions and verdict form, impermissibly focused the jury's attention on the conduct of unnamed nonparties,[2] thereby inviting the jury to allocate fault to those unnamed nonparties in violation of the Comparative Fault Act. Lueder asserts that the court erred in giving the jury the following instruction and verdict form:

> "Nonparty" means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant.

Ind.Code § 34–4–33–2 (1993). We use the phrase "unnamed nonparties" to refer to those who are neither parties nor nonparties to the action.

---

1. We note that Lueder failed to object to the introduction of evidence of the conduct of unnamed nonparties and he has therefore failed to preserve any error in the admission of such evidence for appeal. However, we do address his contentions concerning the instructions and verdict form and necessarily address the propriety of such evidence within that analysis.

2. At the time of Lueder's injury, a nonparty was defined as follows:

### THE DEFENDANT'S PROPOSED STATUTORY VIOLATION INSTRUCTION NO. 4

At the time of the occurrence being considered, there was a statute in effect in the State of Indiana that provided in part as follows:

(a) Each employer—

(1) furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this Act.

(b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct.

. . . .

1926.550(15) Except where electrical distribution and transmission lines have been de-energized and visibly grounded at the point of work or where insulating barriers, not a part of or an attachment to the equipment or machinery, have been erected to prevent physical contact with the lines, equipment or machines shall be operated proximate to power lines only in accordance with the following:

(I) For lines rated 50 KV, or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet;

. . . .

(iii) In transit with no load and boom lowered, the equipment clearance shall be a minimum of 4 feet for voltages less than 50 KV, and 10 feet for voltages over 50 KV up to and including 345 KV, and 16 feet for voltages up to and including 750 KV;

(iv) A person shall be designated to observe clearance of the equipment and give timely warning for all operations where it is difficult for the operator to maintain the desired clearance by visual means;

(v) . . . insulating links, . . . may be used on cranes, but the use of such devices shall not alter the requirements of any other regulation of this part even if such device is required by law or regulation.

(vi) Any overhead wire shall be considered to be an energized line unless and until the person owning such line or the electrical utility authorities indicate that it is not an energized line and it has been visibly grounded.

. . . .

Sec 10. Every employer and place of employment under the jurisdiction of the department of labor created by this chapter shall:

(1) furnish employment that is safe for the employees therein;

(2) furnish and use safety devices, safeguards, methods and processes reasonably adequate to render employement [sic] and place of employment safe; and

(3) do every other thing reasonably necessary to protect the safety of the employee.

. . . .

(21) Power shall be cut off from electric lines within range of shovel or crane operation whenever possible. When it is not possible to cut off power, the shovel or crane shall not be operated within reach of electrical transmission lines.

(22) A man shall be posted to warn the shovel or crane operator of close proximity of electric wires or other wire or guy lines when operating or moving machines.

. . . .

Sec. 3.1. Every employer shall comply with the occupational health and safety standards promulgated under this chapter, and pursuant to any directions in such standards, keep his employees informed of their protections and obligations under the

chapter, the hazards of the work place and suitable precautions,....

Sec. 4..... Each employee shall comply with the occupational health and safety standards promulgated under this chapter.

If you find from a preponderance of the evidence that Mr. Lueder, his co-workers and/or his employer, IBC & Associates violated any portion of this statute on the occasion in question and that the violation was without excuse or justification, such conduct would constitute negligence on that person['s] part and on the part of IBC Associates.

R. 238–40.

The Court is submitting to you forms of possible verdicts you may return in this case.

The forms of the verdicts are:

## VERDICT FOR DEFENDANT

We, the Jury, find that the Defendant, Northern Indiana Public Service Company's acts or omissions were not a proximate cause of Mr. Lueder's damages.

### OR

We, the Jury, find that Mr. Lueder was more than 50% at fault in this case.

We, the Jury, therefore, find for the Defendant, Northern Indiana Public Service Company and against the Plaintiff, William Lueder.

DATED: _____ FOREMAN: _____

## VERDICT FOR PLAINTIFF

A. We, the Jury, find that:

Plaintiff, William Lueder was _____% at fault, and Defendant, Northern Indiana (0-50%)

Public Service Company was _____% at fault in this case. (0-100%)

---

R. 266.[3] At trial, Lueder objected to both the instruction and the verdict form, and requested that the jury be given the verdict form contained in pattern jury instruction 37.09. R. 3228–31, 3240–42. The jury found that NIPSCO's acts or omissions were not a proximate cause of Lueder's damages.

■ In support of his argument that the instruction and verdict form improperly invited the jury to allocate fault to his employer and co-workers, who are unnamed nonparties, Lueder cites *Kveton v. Siade,* 562 N.E.2d 461 (Ind.Ct.App.1990), *trans. denied* (1992). In *Kveton,* the plaintiff, Kveton, was injured when the defendant, Siade, pulled onto the road and collided with Kveton's oncoming vehicle. Siade produced evidence that she pulled onto the road because an unnamed driver had indicated to her that the traffic was clear. Over Kveton's objection, the trial court instructed the jury as follows:

In order to prevail on the allegation of negligence, the plaintiffs must establish, by a preponderance of the evidence, each and every one of the following elements:

1. The existence of a duty owing from the defendant, Tracee Siade, to the plaintiff, Allan Kveton, at the time and under the circumstances of the accident occurring on July 29, 1985; and

2. The defendant's failure to conform her conduct to the requisite standard of care required by the relationship, that is, what a reasonable and prudent person would have done or would not have done under the same or similar circumstances; and,

3. Injuries to the plaintiff proximately resulting from each failure.

If you find that the plaintiffs have failed to prove any one or more of these elements, your verdict may be for the defendant, Tracee Siade.

In this regard, I further instruct you that you may take into consideration the actions or omissions of any operator of a motor vehicle whose conduct, in your judgment, was the proximate cause of the aforesaid accident, whether that operator is a party to this action or not.

**3.** We observe that the inclusion of the proximate cause element on the verdict form appears to be an attempt to have the jury render a special verdict, despite the fact that special verdicts have been abolished under Indiana Trial Rule 49. We

does not raise it. Lueder rather asserts that the verdict form caused the jury to improperly focus on the conduct of unnamed nonparties and to find that those unnamed nonparties were the proximate cause of his injuries.

*Kveton,* 562 N.E.2d at 463. This Court first noted that under the Comparative Fault Act a defendant can assert as a defense that the damages of the claimant were caused in full or in part by a nonparty; however, the defendant must affirmatively plead this defense, and if the evidence is sufficient to support the defense, the verdict form shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty. *Kveton,* 562 N.E.2d at 463. The statute thus requires that fault and damages be allocated to only named nonparties. *Id.* This Court then found that the trial court had erred in giving the above instruction and stated:

> We think the instruction was confusing and misleading to the jury despite the effort to confine its application to whether or not the plaintiffs had met their burden of proof. By directing the jury's attention to the unnamed nonparty's actions and telling them they might consider whether such actions were the proximate cause of the collision, the court was necessarily inviting them to determine the fault of an unnamed nonparty. That is precisely what the statute, as interpreted by *Cornell Harbison [Excavating, Inc. v. May,* 546 N.E.2d 1186 (Ind.1989) ], forbids.

*Kveton,* 562 N.E.2d at 464.

In response, NIPSCO cites *Evans v. Schenk Cattle Co., Inc.,* for the proposition that a defendant is permitted to present evidence of the conduct of those who are not nonparties under the statute, and the jury is free to draw its own conclusions from such evidence. 558 N.E.2d 892 (Ind.Ct.App.1990), *trans. denied* (1991). In *Evans,* the plaintiff, Evans, was injured while operating a bulldozer for his employer on the farm of the defendant, Schenk. Evans had gotten the bulldozer stuck in the mud and Schenk attempted to help him move the bulldozer by pulling it out with a tractor. The bulldozer was attached to the tractor by a hook and chain, and as Schenk pulled the tractor away from the bulldozer, the hook broke and struck Evans in the head, severely injuring him. The jury returned a verdict in favor of Schenk, and Evans appealed, challenging the refusal of the following instruction:

> I instruct you, members of the jury, that under the Indiana Comparative Fault Law, *you may not consider Harold Wayne Evans' employer, Barney Robinson, to be at fault in this case and, therefore,* you may not allow any deduction from plaintiff's recovery for any conduct of Barney Robinson.

*Evans,* 558 N.E.2d at 894. The trial court modified Evans' tendered instruction to delete the emphasized text. This Court held that the trial court did not err in refusing the tendered instruction because Schenk was "entitled to introduce evidence to contest the elements of a negligence claim, even if that evidence is evidence of causation attributable to a party or parties which do not qualify as nonparties under the terms of the act." *Id.* (citing *Moore v. General Motors Corp.,* 684 F.Supp. 220, 221 (S.D.Ind.1988)). This Court went on to reason that:

> If a defendant is permitted to present evidence of the conduct of those who are not nonparties under the statute, it necessarily follows that the jury may consider this evidence and draw its own conclusions. It would therefore be incorrect to instruct the jury that it cannot consider the employer to be at fault. The jury may consider the evidence presented and determine for itself whether the defendant has refuted the plaintiff's claim of negligence.

*Id.* at 895.

Although this Court in *Evans* stated that it was improper to instruct the jury that it could not consider the employer to be at fault, we do not believe the opinion endorses instructions that invite the jury to allocate fault to the employer. The *Evans* decision relied on *Moore v. General Motors Corp.,* 684 F.Supp. 220, in its analysis, an opinion which cautioned:

> [I]n presenting evidence to refute the elements of plaintiff's negligence claim, [defendants] must be very careful to structure their arguments so as to avoid confusing the jury. It is wholly improper for the defendants to attempt to have the jury allocate responsibility for any negligence found against either [of the defendants] to either [the plaintiff's employer] or the [plaintiff's] fellow employees.

684 F.Supp. at 221. Thus, although *Evans* states that it would be improper and confusing to instruct the jury that it cannot consider the employer or co-workers to be at fault when relevant evidence of their conduct has been presented, we believe that the *Evans* decision disapproved such an instruction only insofar as considering the employer or co-workers to be at fault included attributing the cause of the accident to the conduct of those parties; an instruction that the jury cannot consider the employer or co-workers to have been the cause of the accident would be improper since such a conclusion may negate that the defendant was the proximate cause. We disagree with the *Evans* holding insofar as it suggests that the jury can be instructed in a manner that invites them to allocate fault to an unnamed nonparty. Rather, we agree with the holding in *Kveton*, that the Comparative Fault Act prohibits instructions that invite the jury to allocate fault to unnamed nonparties. Thus, it is improper to instruct the jury that specified conduct on the part of the employer or co-workers was negligent. Such instruction serves only to confuse the jury and to invite them to allocate fault to the employer and co-workers.

■ The conduct of the employer and co-workers is relevant only insofar as it negates the elements of the plaintiff's claim; the jury should not be invited to make an affirmative finding of negligence against the employer and co-workers. The instruction at issue here tells the jury that Lueder's employer and/or co-workers have been negligent if they violated any of the provisions set out in the instruction. Because the challenged instruction improperly invited the jury to find negligence and thus allocate fault to Lueder's employer and co-workers in violation of the Comparative Fault Act, the trial court erred in giving the instruction. This error was not cured by instructions that the jury not allocate fault to the employer or co-workers because the instructions as a whole invited the jury to allocate fault to the unnamed nonparties by finding that the negligence of those unnamed nonparties was the cause of Lueder's injuries. The instructions at issue went much further than allowing NIPSCO to present evidence that it was not the proximate cause of the accident; the instructions invited the jury to allocate fault for the accident to Lueder's employer and co-workers by making an affirmative finding of their negligence. Thus, although NIPSCO framed the issue as one concerning proximate cause, in effect it invited the jury to allocate fault to the employer and co-workers in violation of the Comparative Fault Act.

Although we have found reversible error based upon the Comparative Fault Act, we address Lueder's issues regarding the National Electrical Safety Code (NESC) because they are likely to recur upon remand.

### APPLICABLE EDITION OF THE NESC

■ Lueder argues that the trial court erred in refusing to instruct the jury that the 1961 edition of the NESC applied to the case. He argues that the Indiana Utility Regulatory Commission had adopted a regulation that required electric utilities to comply with the 1961 edition of the NESC, and therefore that edition of the NESC applied to the case rather than the subsequent 1984 edition that the Commission had not yet adopted at the time of the accident. Lueder also argues that for this same reason, the trial court erred in admitting evidence of the clearance standards under the 1984 NESC.

■ A trial court erroneously refuses a tendered instruction if (1) the tendered instruction correctly states the law; (2) there is evidence in the record to support the giving of the instruction; and (3) the substance of the tendered instruction is not covered by other instructions given. *Day v. State*, 669 N.E.2d 1072, 1075 (Ind.Ct.App. 1996) (citing *Evans v. State*, 571 N.E.2d 1231 (Ind.1991)).

At the time of Lueder's injury, the Indiana Administrative Code provided that for all cases that were not covered by specific statutes then in effect, Part 2, "Safety Rules for the Installation and Maintenance of Electric Supply and Communication Lines," of the sixth edition of the NESC, as supplemented by United States of America Standards Institute November 29, 1967, were prescribed for future overhead and underground construction practice. Ind.Admin.Code tit. 170, r.

4–1–26 (1984); Ind.Admin.Code tit. 170, r. 4–3–2 (1984). The Indiana Administrative Code further provided that the principles set forth were not intended to require the immediate bringing of existing installations into compliance therewith, except insofar as strength of construction, proper clearances or the rendering of service may require.

Thus, at the time of Lueder's injury, the sixth edition, or the 1961 edition of the NESC, set forth the clearance requirements for existing power lines. Lueder's instructions to this effect were not covered by other instructions, and there was evidence presented that the electrical line in issue did not meet these clearance requirements. It was error for the trial court to refuse to instruct the jury that the 1961 NESC set forth the applicable clearance requirements.

NIPSCO argues that although the Indiana Administrative Code had not yet adopted the 1984 NESC at the time of Lueder's injury, it was relevant as an industry standard, and therefore the trial court did not err in admitting the standards under the 1984 NESC or in refusing to instruct the jury that the 1961 Code governed the case. However, where a violation of a regulation set forth in the Administrative Code is alleged, industry standards are not relevant. ·Rather, the conduct at issue must conform to the standard set forth in the administrative code. *See Illinois Steel Co. v. Fuller,* 216 Ind. 180, 23 N.E.2d 259, 264 (Ind.1939) (holding that evidence of compliance with industry standards is irrelevant when the allegation of negligence rests upon the violation of a positive statute). Therefore, the trial court erred in admitting evidence of the clearance standards set forth in the 1984 NESC.

Reversed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.